# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MOHAMMED NAZIR BIN LEP,

    Petitioner,

      v.

JOSEPH R. BIDEN et al.,

    Respondents.

Civil Action No. 20-3344 (JDB)

## <u>MEMORANDUM OPINION</u>

Petitioner Mohammed Nazir Bin Lep is a detainee at the Guantanamo Bay Naval Station in Guantanamo Bay, Cuba. He has been held in United States custody for eighteen years pursuant to the 2001 Authorization for Use of Military Force ("AUMF"), which permits the United States to detain persons who were part of or substantially supported al-Qaida, the Taliban, or associated forces. See Pub. L. No. 107-40, 115 Stat. 224 (2001). On October 15, 2020, Bin Lep filed a habeas petition in this Court challenging, inter alia, the legality of any future prosecution against him and his detention under the AUMF. The government finally referred criminal charges against Bin Lep to a military commission on January 21, 2021. Rule 707 of the Rules for Military Commissions ("RMC") designates that a defendant must typically be arraigned within thirty days of the service of charges. But in early February, the original military judge continued Bin Lep's arraignment for six months, over his objection, citing safety concerns stemming from the COVID-19 pandemic. That judge, it later turned out, was already planning to relocate to Germany in mid-June and was removed, after only a few months, from Bin Lep's case.

The government has now moved to hold Bin Lep's habeas petition in abeyance pending the completion of his military commission proceedings, which it contends are firmly underway.

Bin Lep objects to the government's abstention request and has cross-moved to permanently enjoin his military commission proceedings as violative of his speedy trial rights under RMC 707. For the following reasons, the Court will defer resolution of both motions until after Bin Lep's rescheduled arraignment date of August 30, 2021 and stay this case during the intervening months. In the meantime, the government will remain obligated to file an updated factual return to the habeas petition by July 16, 2021, as previously ordered by this Court.

### Background

Bin Lep is a citizen of Malaysia. Habeas Pet. [ECF No. 40] ¶ 8. He was captured by local authorities in Thailand in 2003 and transferred to CIA custody based on his alleged participation in al-Qaida operations against the United States. Id. ¶¶ 1, 8. He has been held at Guantanamo since 2006. Redacted Decl. of Mark S. Martins ("Martins Decl.") [ECF No. 51-1] ¶ 4.

The Military Commissions Act of 2009 ("MCA") authorizes the President to establish military commissions to try alien unprivileged enemy combatants for war crimes and certain other offenses. 10 U.S.C. § 948b(a)-(b). Before such a proceeding begins, charges against the accused must be sworn by a member of the armed forces having knowledge or reason to believe the matters alleged are true. Id. § 948q. Then, the Secretary of Defense or his designee—here, the Convening Authority—considers the sworn charges and supporting evidence and decides whether to refer the charges to a military commission. RMC 401, 406, 601. Finally, a military commission must be convened. Id. at 504, 601. All of these elements are required for a "referral" of charges, which is "the order of a convening authority that charges against an accused will be tried by a specified military commission." Id. at 601(a), 601(a) Discussion.

Bin Lep was first recommended for prosecution by President Obama's Guantanamo task force in January 2010. See Guantanamo Review Dispositions, Letter from U.S. DOJ (June 17,

2013) Enclosure at 4, https://perma.cc/23H5-5ZXP. Prosecutors initially swore charges against Bin Lep in December 2017 and then supplemented those charges in April 2019. See Martins Decl. ¶¶ 5, 14. Nonetheless, by October 2020, formal charges had still not been referred against Bin Lep, and he filed the instant habeas petition in this Court.[1] At the same time, he sought preliminarily to enjoin the government from taking any further steps to try him by military commission until his habeas petition was resolved, arguing, inter alia, that the government's seventeen-year delay in charging him had rendered any future prosecution ultra vires. See Mem. of Law in Supp. of Pet'r's Mot. for Prelim. Inj. [ECF No. 41-1] at 1. This Court denied Bin Lep's requested injunction, concluding that although it had jurisdiction over his claims and abstention was inappropriate at the pre-referral stage, Bin Lep had not shown a likelihood of success on the merits or irreparable injury. See Mem. Op. (Dec. 14, 2020) [ECF No. 56] at 1. At the parties' request, the Court set a deadline of January 28, 2021 for the parties to propose a schedule for further proceedings on the habeas petition. See Order (Dec. 14, 2020) [ECF No. 55] at 1.

On January 21, 2021—nearly eighteen years after Bin Lep's capture—the Convening Authority finally referred charges against Bin Lep to a military commission with directions that he be tried jointly with two codefendants, Encep Nurjaman and Mohammed Farik bin Amin. See Resp'ts' Mem. in Supp. of Mot. to Hold Pet. in Abeyance Pending Completion of Mil. Comm'n Proceedings ("Abeyance Mot.") [ECF No. 62] at 1. The charges allege that "[Bin Lep] and his codefendants planned, and aided and abetted in the bombing of nightclubs in Bali, Indonesia, in

---

[1] This is Bin Lep's third habeas petition. His first petition in January 2009 also challenged, inter alia, the legality of his detention under the AUMF. See Pet. for Writ of Habeas Corpus, No. 09-cv-0031 (JDB) [ECF No. 1]. The government filed a factual return in that case on November 19, 2009, see Notice of Filing Factual Return, No. 09-cv-0031 (JDB) [ECF No. 36], but Bin Lep ultimately dismissed that petition without prejudice in 2013, Stipulation, No. 09-cv-0031 (JDB) [ECF No. 91]. His second habeas petition in September 2019 challenged certain pre-referral actions by the government that would limit his ability to access and use evidence in a future commission trial. Those proceedings resulted in a preliminary injunction in his favor, see Mem. Op. & Order, No. 19-cv-2799 (JDB) [ECF No. 25] (public version); thereafter, based on subsequent developments, the petition was dismissed with prejudice as moot, Order, No. 19-cv-2799 (JDB) [ECF No. 32].

2002 and the bombing of a J.W. Marriot hotel in Jakarta, Indonesia, in 2003." Id. (citations omitted). The charges include "violations of the law of war, including conspiracy, murder, attempted murder, intentionally causing serious bodily injury, terrorism, attacking civilians, attacking civilian objects, destruction of property, and accessory after the fact." Id. at 1–2. RMC 707(a)(1) provides that a defendant must be arraigned "[w]ithin 30 days of the service of charges," unless a continuance is granted. The Chief Trial Judge for the Military Commissions Trial Judiciary, Colonel Douglas W. Watkins, promptly detailed Colonel Charles L. Pritchard as presiding judge, and in accordance with that Rule, Colonel Pritchard scheduled the arraignments for February 22, 2021. See App'x [ECF No. 71] at 1.[2]

In a January 28, 2021 joint status report, the government informed this Court that it intended to file a motion to hold Bin Lep's habeas petition in abeyance now that he had been formally charged. See Joint Status Report (Jan. 28, 2021) [ECF No. 60] at 1–2. The government also requested that the Court defer setting a due date for the factual return—which would set forth the factual basis for Bin Lep's detention under the AUMF—until the abeyance motion was resolved. Id. at 2. The government stated that, even though it had filed a factual return in Bin Lep's original habeas case twelve years prior, it would take time to update that document "based on further developments and information made reasonably available over roughly [the last] decade." Id. at 3. Bin Lep agreed to the government's proposed briefing schedule on the abeyance motion, but requested a March 1 deadline for the factual return, emphasizing that just prior to the referral of charges the government had "represented that [it was] prepared to provide an updated factual return in reasonably short order." Id. at 4. The following day, the Court entered a scheduling order adopting the parties' proposed briefing schedule and requiring the government

---

[2] The Court refers to the CM/ECF page numbers in the Appendix.

to file an updated factual return by April 15. Scheduling Order (Jan. 29, 2021) [ECF No. 61].

On January 30, 2021, Bin Lep's codefendants asked Colonel Pritchard to continue the arraignments either indefinitely or for a minimum of thirty days, citing safety concerns due to COVID-19 and lack of adequate resources to proceed. App'x at 3. Bin Lep objected to those requests, insisting on his right to a speedy trial. Id. at 4. The government agreed that postponing the arraignments was appropriate "in light of evolving efforts by the federal government to fight the ongoing pandemic and to continuously update health protection policy to meet changing conditions" and sought a forty-day continuance. Id.

Colonel Pritchard determined on February 2, 2021 that a "continuance of the arraignments [wa]s reasonable." Id. at 9. His ruling described a number of "gaps" in the government's plan for conducting the arraignments at Guantanamo and reasoned that "because the Convening Authority referred the charges during the global COVID-19 pandemic, [that] plan created an artificial timeline that d[id] not permit any of the required participants sufficient time to adequately prepare for travel[,] the Defense to fully brief the Commission on their opposition to [that] plan," or defense counsel to "discuss the arraignments" with defendants beforehand. Id. at 7. Nonetheless, Colonel Pritchard concluded that an indefinite continuance was inappropriate given the government's and Bin Lep's "rights to proceed to trial in a timely fashion," and indicated that an amended arraignment order would issue "in due course." Id. at 8–9.

On February 11, Colonel Pritchard asked the parties to propose new arraignment dates, as well as "an initial litigation schedule [for] law motions, jurisdictional challenges, and systemic challenges," noting that "[f]or planning purposes, the date for the arraignments w[ould] be no earlier than 26 July 2021." Id. at 10. That order also stated that discovery would proceed as normal, notwithstanding the continued arraignments, and that the defendants should submit ex

parte their initial theory of the case so that Colonel Pritchard could prepare to address any forthcoming discovery disputes regarding classified information. Id. at 10–11.

In accordance with this Court's scheduling order, the government filed its abeyance motion on February 15, arguing that this Court should abstain from resolving Bin Lep's habeas petition until his military commission proceedings are complete. The government briefly referenced the postponement of Bin Lep's arraignment in a footnote, but ascribed little-to-no significance to this development. See Abeyance Mot. at 9 n.5. Bin Lep filed his opposition to the abeyance motion on March 9 and, at the same time, cross-moved to permanently enjoin the government "from unlawfully trying him before a military commission" in violation of his speedy trial rights under RMC 707(a)(1). See Pet'r's Mem. of Law in Supp. of Pet'r's Cross-Mot. for Permanent Inj. ("Cross-Mot.") [ECF No. 72-2]. In response to the cross-motion, the government once again argued that abstention was appropriate. See Resp't's Opp'n to Pet'r's Cross-Mot. for Permanent Inj. [ECF No. 70] at 11–26.

On April 16, Colonel Pritchard rescheduled the arraignments for August 30, 2021, explaining that "[t]his date w[ould] allow time for trial participants to receive a COVID-19 vaccination if desired, and allow time for travel and any necessary quarantine or restrictions on movement." See Am. Arraignment Order, AE 0002.008 (TJ) [ECF No. 76-1] at 1. The following week, Colonel Pritchard also granted Bin Lep's request to defer setting any pretrial motions deadlines until after arraignment, see Ruling, AE 0014.008 (TJ) [ECF No. 76-2], and entered a "protective order to protect unclassified discovery material," see Notice of Filing (Apr. 26, 2021) [ECF No. 75] at 2. The government "then began disclosure of unclassified material" to all defendants. Id.

The Court held a hearing on the government's abeyance motion and Bin Lep's cross-

motion for a permanent injunction on April 27. The Court pressed government counsel about the status of Bin Lep's commission proceedings and whether his arraignment might be further postponed—including what might happen if "Colonel Pritchard or another judge, since they do seem to turn over rapidly, were to say . . . that we need more time." Hr'g Tr. (Apr. 27, 2021) ("Hr'g Tr.") [ECF No. 77] at 10:7–9; 14: 17–20. Counsel emphasized that "the case is underway" and indicated that "there are always possibilities, but at this point what we know is that the arraignment date has been set." Id. at 10:7–15.

Just ten days later, Colonel Watkins removed Colonel Pritchard as presiding judge and replaced him with Commander Hayes C. Larsen. See Mot. for Leave to File a Suppl. Br. in Opp'n to Resp't's Mot. to Stay & in Supp. of Pet'r's Cross-Mot. for Permanent Injunc. [ECF No. 78] at 1. Bin Lep brought this development to the Court's attention, proffering that the government had detailed Colonel Pritchard to his commission case despite its knowledge that Colonel Pritchard planned to retire in July 2021. See Pet'r's Suppl. Br. [ECF No. 78-1] at 1. The Court granted Bin Lep leave to file supplemental briefing, and Bin Lep argued that, by immediately deferring arraignment until July 26 and then ultimately until August 30, Colonel Pritchard had "used the COVID-19 pandemic as a pretext for postponing any meaningful action in the military commission system until he was long gone," and that "abstention is clearly inappropriate because the validity of COL Pritchard's orders . . . are irreparably tainted by actual and apparent bias." Id. at 2, 11. Bin Lep also criticized the government for its lack of candor at the April 27 hearing given the Court's questioning about whether his military commission proceedings might be further delayed.

Bin Lep's intel, it turned out, was not entirely correct. The government clarified in supplemental briefing that Colonel Pritchard had no retirement plans and had instead received "permanent change of station orders to begin a new assignment overseas, as a circuit chief trial

judge in summer 2021." Resp't's Opp'n to Pet'r's Suppl. Br. ("Suppl. Opp'n") [ECF No. 81] at 7. But the government's response did not address the heart of Bin Lep's concerns: that Colonel Pritchard's departure from the case had been planned since the referral of charges and may have influenced his decision to postpone the arraignment for six months.

To clarify this unexpected turn of events, the Court ordered the government to file additional declarations regarding when Military Commissions Trial Judiciary staff and Colonel Pritchard first learned that he would be reassigned and removed as presiding judge. See Min. Order (May 21, 2021). The government responded with a declaration from Colonel Watkins, attesting that he and Colonel Pritchard were aware by January 6, 2021—over two weeks before Colonel Pritchard's detail to Bin Lep's case—that Colonel Pritchard would be reassigned overseas to Germany and would need to report to that post no later than June 15, 2021. See Decl. of Douglas K. Watkins [ECF No. 83-1] at 2.

During the course of briefing and supplemental briefing on the pending motions, the Court postponed the due date for the factual return to July 16, 2021. See Min. Order (May 20, 2021). Briefing on the abeyance motion and the cross-motion is now complete, and the motions are ripe for consideration.

## Analysis

The Court begins by reviewing the relevant abstention principles outlined by the D.C. Circuit's decision in In re al Nashiri ("al-Nashiri II"), 835 F.3d 110 (D.C. Cir. 2016), cert. denied, 138 S. Ct. 354 (2017), before assessing whether abstention is warranted now.

### I. Abstention Principles Under al-Nashiri II

"Federal courts generally 'have a strict duty to exercise the jurisdiction that is conferred upon them by Congress.'" al-Nashiri II, 835 F.3d at 118 (quoting Quackenbush v. Allstate Ins.

8

Co., 517 U.S. 706, 716 (1996)). "This duty is not, however, absolute," and "[i]n the context of criminal prosecutions, federal courts routinely decline to adjudicate petitions that seek collateral relief to prevent a pending prosecution." Id. "[W]here the issue the petitioner challenges can be litigated in pretrial motions and raised as a defense at trial, federal courts typically require the petitioner to navigate that process instead of skirting it." Id. (citing Jarkesy v. SEC, 803 F.3d 9, 26 (D.C. Cir. 2015)). The Supreme Court first extended these abstention principles to court-martial proceedings in Schlesinger v. Councilman, 420 U.S. 738 (1975), and in al-Nashiri II the D.C. Circuit applied those principles specifically to military commissions constituted under the MCA.

In laying out a general rule favoring abstention in the MCA context, the D.C. Circuit "identified 'two comity considerations' that drive the abstention analysis": "'the adequacy of the alternative system in protecting the rights of defendants and the importance of the interests served by allowing that system to proceed uninterrupted by federal courts.'" al-Baluchi v. Esper, 392 F. Supp. 3d 46, 56 (D.D.C. 2019) (quoting al-Nashiri II, 835 F.3d at 121). As for the adequacy of the MCA, the D.C. Circuit instructed that federal courts should not assess whether abstention is appropriate "by examining the [MCA's] on-the-ground performance." al-Nashiri II, 835 F.3d at 123. Instead, courts should presume that the system designed by Congress and the Executive is, in fact, adequate, absent a specific claim that the MCA is "unlawful or will prevent [a defendant] from fully defending himself." Id. The D.C. Circuit also concluded that it was "vital" for federal courts to allow the MCA system to proceed uninterrupted to avoid "unduly imping[ing] on the prerogatives of the political branches in the sensitive realm of national security." Id. at 124. Indeed, the D.C. Circuit determined that "[b]y providing for direct review Article III review . . . on appeal from any conviction in the military system," "Congress and the President [had]

implicitly instructed . . . that judicial review should not take place before [the MCA] system ha[d] completed its work." Id.

In sum, al-Nashiri II directs that a district court should "abstain in favor of ongoing military-commission proceedings," unless "any features unique to [petitioner's] case" suggest that abstention is unwarranted. Id. at 128. Importantly, "abstention is appropriate only to the extent that this Court's consideration of petitioner's [habeas petition] would interfere with the military commission proceeding." Khadr v. Bush ("Khadr I"), 587 F. Supp. 2d 225, 230 (D.D.C. 2008). The key inquiry then is whether a habeas claim "ha[s] been, will be or, at the very least, can be raised in the military commission proceeding," id., or whether "the claims raised in a habeas petition could overlap with the military commission's inquiries," Khadr v. Obama, 724 F. Supp. 2d 61, 66 (D.D.C. 2010).

## II.    Discussion

### A.    Abeyance Motion and Cross-Motion

The government presents a simple rationale for abstention: the January 21, 2021 referral of charges formally initiated Bin Lep's military commission proceedings, and in accordance with al-Nashiri II, this Court should now abstain to allow that system to work its course. See Abeyance Mot. at 1–3. According to the government, Bin Lep can raise (at least the crux of) every claim in his habeas petition—as well as his RMC 707 claim and judicial bias allegations—before Commander Larsen and then appeal any unfavorable rulings to the D.C. Circuit following a final judgment in his military commission case. See id. at 15, 19–20; Resp'ts' Reply on Mot. to Hold Pet. in Abeyance Pending Completion of Mil. Comm'n Proceedings ("Abeyance Reply") [ECF No. 69] at 6; Suppl. Opp'n at 11.

Bin Lep, in turn, argues that abstention at this stage would be both premature and unfair.

At the outset, he disputes that his military commission proceedings are "ongoing," contending that, in light of the immediate six-month postponement of his arraignment and the detailing of Colonel Pritchard despite his planned departure for Germany, "[t]he nominal referral of [charges] for trial remains an empty formality." Pet'r's Resp. to Resp'ts' Mot. to Stay (Public Version) ("Abeyance Opp'n") [ECF No. 72-1] at 1; Pet'r's Suppl. Reply Br. ("Suppl. Reply") [ECF No. 84]. Given the Biden Administration's ongoing review of Guantanamo, Bin Lep also questions whether "any such proceedings" might be suspended on an interim basis (as occurred during a 2009 review of Guantanamo by President Obama) or halted permanently as a result. Abeyance Opp'n at 5.

Even if his military commission proceedings do qualify as "ongoing," Bin Lep still disputes that abstention is appropriate for at least three reasons. First, he contends that the government has acted in bad faith to manufacture a basis for abstention by hastily referring charges against him during a global pandemic "with no reasonable expectation" that proceedings "would actually commence any time soon." See id. at 8–9. To this end, he emphasizes that the government had no obligation to refer charges when it did, and that if the government "had any intention of actually proceeding with [his] case," it could have vaccinated all participants or crafted a plan for remote hearings (as it did in another Guantanamo case) to facilitate his timely arraignment. See id. at 9; see also Suppl. Reply at 3. Second, he argues that unreasonable delays inherent in the military commission process warrant an exception to the general abstention rule because any Article III review of his commission proceedings will not realistically occur for at least a decade. Abeyance Opp'n at 11–12. Finally, he asserts that, at a minimum, this Court should not trust the military commission system to decide whether Colonel Pritchard's alleged bias infected Bin Lep's proceedings and should instead resolve the pending cross-motion itself. Suppl. Reply at 17–18.

Al-Nashiri II makes clear that, absent unique circumstances, a district court should abstain

in favor of ongoing military commission proceedings.  al-Nashiri II, 835 F.3d at 128.  But al-Nashiri II does not define what constitutes an "ongoing" commission "proceeding" for purposes of abstention analysis, nor does it direct that a district court <u>must</u> abstain the moment that any such a proceeding commences.  Neither the government, nor this Court, is aware of any case in the MCA context where a district judge has held a habeas petition in abeyance prior to a petitioner's arraignment before the military judge.  <u>See</u> Hr'g Tr. 14:1–7.  Indeed, most abstention decisions in this District are issued after military commission proceedings are well underway.  <u>See, e.g.</u>, <u>Abdulrazzaq v. Trump</u>, 422 F. Supp. 3d 281, 297 (D.D.C. 2019) (staying petitioner's habeas case in 2019 in light of charges referred in 2014); <u>al-Baluchi</u>, 392 F. Supp. 3d at 67 & n. 20 (staying petitioner's habeas case in 2019 in light of charges referred in 2012 and recognizing that the "likelihood of conflicting rulings—and the magnitude of the resulting interference—is substantially greater as the military commission draws closer to trial"); <u>Khadr I</u>, 587 F. Supp. 2d at 234 (staying petitioner's habeas case in part on the eve of his scheduled military commission trial).

That is not to suggest that abstention is necessarily inappropriate during the early stages of a military commission case.  And the Court takes seriously the need to avoid interfering with any ongoing commission proceedings, which is the "vital" interest that abstention serves.  <u>See</u> <u>al-Nashiri II</u>, 835 F. 3d at 121.  But here, there is sufficient uncertainty about whether and at what pace Bin Lep's commission will proceed, and hence, any abstention ruling at this juncture seems premature.  To accommodate these concerns, the Court will defer ruling on the pending motions—which raise substantially similar abstention questions—until <u>after</u> Bin Lep's new arraignment date of August 30, 2021, to see if his military proceedings actually continue as the government expects.  But to eliminate any potential interference with his commission case during the intervening weeks,

the Court will temporarily stay Bin Lep's habeas proceeding, except for the filing of the factual return.

Bin Lep's military commission is "ongoing" in the literal sense of the word: Bin Lep has been served with formal charges; two different judges have been assigned to preside over his case; and some very preliminary pretrial matters involving scheduling and limited discovery have been addressed for the time being. Even so, it is undeniable that any "proceedings" have not gotten off to an alacritous—or particularly auspicious—start. Bin Lep's arraignment was instantly postponed six months, and his rescheduled arraignment date remains nearly two months away. Briefing on any substantive pretrial motions will not take place until after arraignment, see AE 0014.008 (TJ), Ruling (Apr. 20, 2021) [ECF No. 76-2] at 2, and the parties are still addressing a variety of basic resource issues, including defense counsel's ability to meet confidentially with their clients for the first time since the pandemic hit, see AE 0019.001 (TJ), Order (Apr. 16, 2021) [ECF No. 75-1]. Moreover, although Colonel Pritchard resolved some initial scheduling and discovery issues during his short tenure on the case—which the government has cited as evidence that proceedings are underway, see, e.g., Notice of Filing of Add'l Mil. Judge Order [ECF No. 75]; Notice of Add'l Mil. Judge Orders [ECF No. 76]—Commander Larsen may now reconsider even those limited rulings, including the one that underlies the cross-motion, as he sees fit. Cf. Suppl. Opp'n at 9–10 ("Judge Larsen . . . has the authority to reconsider any of the orders of Judge Pritchard, consistent with the well-established law and practice permitting a successor military judge to revisit a prior judge's pretrial decisions.").

To its credit, the government has recently moved for an earlier arraignment date, see Notice of Filing in Resp. to Min. Order of May 21, 2021 ("Resp'ts' Resp. to May 21 Min. Order") [ECF No. 83] at 2 n.2, but it remains unclear if Bin Lep's codefendants—who also sought to delay

arraignment for reasons unrelated to the pandemic, see App'x at 3–4—or Commander Larsen will acquiesce to this request. Furthermore, even though the COVID-19 situation has substantially improved in the United States since Colonel Pritchard's initial rulings, this Court is not sure how the pandemic might continue to affect in-person proceedings or pre-arraignment preparations at Guantanamo this summer.

These events generate some real uncertainty about when and how Bin Lep's commission proceedings will continue to unfold in the coming months, which makes the abstention issues in this case challenging. And this uncertainty is only compounded by the fact that, just weeks after charges against Bin Lep were referred, Guantanamo itself came under Executive review. See Matt Spetalnick et al., Biden Launches Review of Guantanamo Prison, Aims to Close It Before Leaving Office, Reuters (Feb. 12, 2021), https://www.reuters.com/article/us-usa-biden-guantanamo-exclusive/exclusive-biden-aides-launch-review-into-closing-guantanamo-prison-long-a-source-of-discord-idUSKBN2AC1Q4 (reporting that President Biden had launched a formal review of Guantanamo with the "goal" and "intention" of shutting down the facility before his presidency ends). To be sure, the Biden administration has not announced the contours of what that review will entail, and Bin Lep's assertions that all ongoing commission proceedings will be suspended in the process are speculative. See Abeyance Opp'n at 5. Nonetheless, the fact that the government is actively reconsidering its Guantanamo policy plants one more seed of doubt about whether Bin Lep's arraignment, and prosecution more generally, will proceed on course.

The significance of arraignment in the MCA context also counsels in favor of waiting to resolve the abstention questions until after that proceeding is held. Arraignment "consist[s] of reading the charges and specifications to the accused and calling on the accused to plead." RMC 904. Arraignment must be conducted within a specific timeframe after the service of charges, see

id. at 707(a)(1), and a defendant is entitled to certain disclosures in advance of the proceeding, see id. at 304(c)(1) ("[P]rior to arraignment, the prosecution shall disclose to the defense the contents of all relevant statements . . . by the accused, that are within the possession, custody, or control of the Government.");[3] id. at 506(e) ("[P]rior to arraignment, any party may move for a session . . . to consider matters relating to government information" and "establish the timing of requests for discovery."). Moreover, unlike some other pretrial hearings, the accused must be present, further implying that arraignment marks an important moment in a commission case. See id. at 804(a) ("[T]he accused shall be present at arraignment, the time of the plea, [and] every stage of the trial . . . .").[4]

Nonetheless, it is really the passage, rather than the substance, of arraignment that is most relevant for present purposes. Prior to arraignment, the Convening Authority may withdraw charges from one military commission and refer them to another for any reason that is not improper, and "many" such reasons might exist. See id. at 604(b), Discussion (citing "receipt of additional charges, . . . reconsideration by the convening authority . . . of the seriousness of the offenses, . . . and routine duty rotation of the personnel constituting the military commission" as some of the "[m]any reasons for a withdrawal which will not preclude another referral"). Once arraignment occurs, however, the bar to re-referral grows higher, and charges can only be withdrawn and re-referred to a new commission if "the accused suffers no unfair prejudice." Id. In other words, before arraignment, the Convening Authority can stop and restart Bin Lep's

---

[3] The record does not establish whether the prosecution has made these disclosures or has waited to do so in light of the delayed arraignment.

[4] Bin Lep represents that military judges typically submit to voir dire "at arraignment," so that the parties can "identify those aspects of a military officer's relationships and career that might affect his decisions." Suppl. Reply at 9 (quotation marks and citation omitted). Arraignment, then, appears to present the first chance for Bin Lep and his codefendants to question Commander Larsen about any grounds for disqualification.

military commission proceeding largely without consequence, but after arraignment, the Convening Authority cannot. The fact, then, that Bin Lep's military case remains in the pre-arraignment stage, during which the Convening Authority can freely alter the course of proceedings, reduces the Court's confidence that Bin Lep's commission case will progress forward as planned.[5]

In light of the uncertainty over how Bin Lep's criminal case will proceed and the minimal activity in that case so far, the Court sees no reason to rush into making an abstention decision now. The parties have identified no prejudice that would result from deferring resolution of the pending motions until after August 30, 2021, when Bin Lep is scheduled to be arraigned. See Hr'g Tr. 41:9–14. And the Court is concerned that, were it to resolve the abeyance motion now, it would—with no discernible benefit to either party in the interim—be called upon to reconsider that ruling in the coming months if Bin Lep's arraignment is further delayed or charges are withdrawn. Other courts have, notwithstanding the referral of charges, likewise allowed some time to pass before deciding whether to abstain, see, e.g., al-Baluchi, 293 F. Supp. 3d at 55 (deciding 2012 abeyance motion in 2019), and this Court concludes that such an approach is prudent here.

In his supplemental brief, Bin Lep asserts that the circumstances of Colonel Pritchard's removal provide reason alone to deny the government's abstention request, particularly with respect to the cross-motion. See Suppl. Reply at 16–20. But this new development, and the round

---

[5] Bin Lep also makes the case that, even though a military judge has been assigned to his commission, abstention is inappropriate because the Convening Authority continues to hold substantial authority over commission proceedings at the pre-arraignment stage. As Bin Lep's counsel put it at oral argument—and the government did not dispute—if Bin Lep moved to dismiss his criminal charges now under RMC 707, for example, and won, "[t]he convening authority tomorrow could withdraw the charges without prejudice[], to bringing them again" and subsequently arraign Bin Lep within thirty days. Hr'g Tr. at 33:17–22. Hence, even though Bin Lep may have some "other forum . . . to turn to for relief," Bin Lep v. Trump, 2020 WL 7340059, at *4 (D.D.C. Dec. 14, 2020) (Bates, J.), any relief admittedly might be fleeting at the pre-arraignment stage.

of supplemental briefing that it generated, only confirms the Court's view that the course of Bin Lep's commission proceedings remains in flux and deferring resolution of both pending motions is the sensible approach. The D.C. Circuit has remarked that "bias questions" should "be disposed of at the earliest possible opportunity." In re al-Nashiri ("al-Nashiri I") 791 F.3d 71, 79 (D.C. Cir. 2015) (alterations omitted) (quoting In re United States, 666 F.2d 690, 694 (1st Cir. 1981)). But Bin Lep has not established that Commander Larsen is incapable of addressing allegations concerning Colonel Pritchard's bias in the first instance. Cf. al-Nashiri II, 835 F.3d at 128 (recognizing that abstention is inappropriate where "'extraordinary circumstances' both present the threat of 'great and immediate' injury and render the alternative tribunal 'incapable of fairly and fully adjudicating the federal issues before it'") (quoting Kugler v. Helfant, 421 U.S. 117, 123–24 (1975)).

Indeed, Bin Lep is wrong to interpret the D.C. Circuit's later decision in In re al-Nashiri ("al-Nashiri III"), 921 F.3d 224 (D.C. Cir. 2019), to hold that a new military judge is "incapable of vacating all the orders necessary to purge the proceedings of [a prior military judge's] lingering and disqualified influence." See Suppl. Reply at 17 (quoting al-Nashiri III, 921 F.3d at 239). In al-Nashiri III, the U.S. Court of Military Commissions Review ("CMCR"), which sits as an appellate tribunal in the military commission system, had already ruled that the prior judge had no disqualifying bias. See 921 F.3d at 238. Because the CMCR's "factual findings and legal conclusions . . . remain[ed] [the] law of the case," the D.C. Circuit reasoned that the new military judge lacked the authority to appropriately address defendant's judicial bias claim. Id. at 239. Here, the CMCR has not opined on the allegations involving Colonel Pritchard, and Commander Larsen may evaluate not only those allegations but also any of Colonel Pritchard's orders without

any law-of-the-case constraints imposed by the CMCR.[6]

Nonetheless, the fact that both Colonel Pritchard and the Trial Judiciary anticipated from the outset that his detail to Bin Lep's case would be short-lived creates a reasonable inference that the government did not expect Bin Lep's prosecution to progress substantially in its early months. For instance, in addition to setting the deadline for arraignment, RMC 707 also provides that the members of the military commission shall be assembled for trial within 120 days of the service of charges. RMC 707(a)(2). Adherence to that timeline would have led to a trial in late May 2021. Yet the government assigned Colonel Pritchard, who had plans to report to a different job in Germany in mid-June, to preside over Bin Lep's case. See Decl. of Douglas K. Watkins at 2.[7]

The briefing on Colonel Pritchard's removal has also unfortunately led this Court to question whether the government's representations at the April 27 hearing were entirely accurate. The Court recognizes now that government counsel in this case was not aware of Colonel Pritchard's imminent departure when he assured the Court, more than once, that Bin Lep's military proceedings were underway and that there was no reason to suspect that anything might throw those proceedings off-course. See Hr'g Tr. 3:7–10; 9:12–21; 10:10–15; 68:14–20. And the Court

---

[6] The government also correctly points out that the D.C. Circuit decisions cited by Bin Lep address allegations of judicial bias against military commission judges in the mandamus context. See Suppl. Opp'n at 19; see also, e.g., In re al-Tamir, 993 F.3d 906, 909–10 (D.C. Cir. 2021); al-Nashiri III, 921 F.3d at 233; In re Mohammad, 866 F.3d 473, 476 (D.C. Cir. 2017). While these decisions do suggest that there have been recurrent judicial bias issues in the military commission system, they do not support the proposition that, in all instances, the military commission system cannot be "trusted with deciding judicial conduct issues." See Suppl. Reply at 18 (emphasis added).

[7] The government's suggestion, on the current record, that Colonel Pritchard's expected reassignment neither precluded his initial detail to Bin Lep's case in January 2021 nor required his removal as presiding judge borders on disingenuous. See Resp'ts' Resp. to May 21 Min. Order at 1. Guantanamo and Germany are located an ocean apart, and presiding over a multi-defendant criminal case at Guantanamo is no doubt a time-intensive responsibility. The Regulation for Trial by Military Commission provides that "[m]ilitary judges in the Military Commissions Trial Judiciary may be detailed to other duties by the Chief Trial Judges of their respective services, provided that such other duties do not conflict with their primary duty as military judges for military commissions trials." Reg. for Tr. by Mil. Comm. ("RTMC") § 6-2 (emphasis added). It seems unrealistic that Colonel Pritchard's planned relocation to Germany would not "conflict with" his duty as presiding judge thousands of miles away and quite quickly prompt his removal from the case.

also appreciates the steps that counsel have taken to clarify what certain government actors (namely, Colonel Watkins and Colonel Pritchard) knew when. But a client, no less than an attorney, must "answer for [his] lack of candor" to this Court, see Micula v. Gov't of Romania, 2018 WL 10196624, at *3 (D.D.C. May 22, 2018) (Mehta, J.), and government counsel must tread carefully to ensure that they are fully and accurately disclosing their clients' knowledge of relevant events to this Court moving forward.

The Court disagrees, moreover, with the suggestion that what the government terms the MCA's "unlawful command" provision somehow relieves respondents in this lawsuit of their obligations to be forthcoming with counsel or the Court. See Resp'ts' Resp. to May 21 Min. Order at 2–3. The MCA states that "[n]o authority convening a military commission . . . may censure, reprimand, or admonish the military commission, or any member, military judge, or counsel thereof." 10 U.S.C. § 949b(a)(1). Providing government habeas counsel with the necessary information to offer this Court a complete and honest assessment of the status of Bin Lep's commission proceedings, including any foreseeable sources of delay, does not contravene this provision.

Ultimately, this Court cannot properly evaluate the abstention issues raised in the government's abeyance motion and Bin Lep's cross-motion without an understanding of whether and at what pace his commission proceedings are likely to progress, and the Court relies on counsel to provide truthful information in aid of this analysis. The government has assured the Court that there is no reason to suspect Bin Lep's arraignment will be further delayed, including following Colonel Pritchard's removal from the case. See, e.g., Hr'g Tr. 62:11–18 ("[T]here is now a definite date, the August 30th date. Other than speculation, there is no reason for thinking that the August 30th date won't hold."). But Colonel Pritchard's removal provides further grounds to believe that

developments that might affect the abstention analysis are continuing to unfold. This circumstance, then, also supports the Court's view that waiting to resolve the pending motions until after August 30 is appropriate because it will lead to a better factual record and, thus, a more informed judgment by the Court. Colonel Pritchard's departure does not, however, convince the Court that it should <u>at minimum</u> resolve Bin Lep's cross-motion now, as he suggests. <u>See</u> Pet'r's Suppl. Br. at 2. Further court action on the cross-motion generates the same concerns of interfering with commission proceedings that are at the heart of the government's abeyance motion. Hence, it makes sense to decide the abstention issues raised by both pending motions at the same time, after arraignment is scheduled to take place.

In sum, the Court will defer ruling on both the government's abeyance motion and Bin Lep's cross-motion until after his scheduled arraignment date of August 30, 2021. But, to avoid the potential for interference with any ongoing or imminent activity in his commission proceedings, the Court will stay all action in his habeas case, except for the filing of the factual return, until that date.

### B. Factual Return

Unlike conducting proceedings on the merits of Bin Lep's habeas petition, the preparation and filing of the factual return does <u>not</u> threaten to disrupt his criminal case. The Court will not, therefore, vacate the due date for filing the factual return. <u>See</u> <u>Khadr I</u>, 587 F. Supp. 2d at 230 ("[A]bstention is appropriate only to the extent that this Court's consideration of petitioner's [habeas petition] would interfere with the military commission proceeding.").

To begin, the Court finds unpersuasive the government's argument that filing the factual return is unduly burdensome. <u>See</u> Abeyance Reply at 19. The evidence supporting Bin Lep's detention concerns events that transpired nearly two decades ago and will continue to grow stale

if the due date for the factual return is further delayed.  Moreover, while some time and resources are, of course, involved in filing any factual return, here the government need only update the 2009 version of the factual return, which it has said it can do in "reasonably short order."  Abeyance Opp'n at 18.  To accommodate any lingering timing concerns, the Court has already extended the deadline for the factual return by several months.

The government's contention that preparing the factual return might cause this Court to "churn[]" "over some of the same documents" that will be "analyzed . . . in the criminal setting" likewise misconstrues the scope of the task at hand.  See Hr'g Tr. 16:7–21; 18–21.  The Court will not at this time "churn" over the material in the factual return or issue any rulings with respect to the evidence contained therein.  See id. 18:19–19:6.  It will only require the government to fulfill its obligation to disclose the factual basis for Bin Lep's detention under the AUMF.  Because this task does not interfere with his military commission proceedings, vacating the factual return deadline does not serve the comity or efficiency interests that might warrant such relief on abstention grounds.  See Al Odah v. Bush, 593 F. Supp. 2d 53, 58 (D.D.C. 2009) (determining that abstention is appropriate where it "eliminates the potential for conflicting findings or rulings that would arise if the Petitioner's habeas cases and military commissions proceed simultaneously"); see also al-Nashiri II, 835 F.3d at 127 (recognizing that abstention serves to "eliminate[] duplicative proceedings, potentially obviate[] the need for judicial intervention, and inform[] and narrow[] eventual Article III review") (quoting Councilman, 420 U.S. at 756–58)).

This Court has previously required the government to produce a factual return for a Guantanamo detainee despite issuing a stay of the detainee's habeas petition.  See al-Anazi v. Bush, 370 F. Supp. 2d 188, 199–200 (D.D.C. 2005) ("Although the Court is sensitive to the concerns of respondents [regarding inadvertent disclosure of classified information], the factual

returns appear necessary for petitioners' counsel effectively to represent petitioners [because the returns provide] access to [] basic factual information.").  And other judges in this District have denied similar requests by the government to postpone the due dates for factual returns until after abstention issues have been resolved.  See, e.g., al-Darbi v. Bush, 05-cv-2371, ECF Nos. 122 & 132 & 135 & Min. Order (Mar. 13, 2009) (setting a "final" due date for the factual returns in four habeas cases despite government's request to resolve the pending abeyance motions first and then deciding abeyance motions several days after the returns were filed).[8]

The Court also finds that requiring the factual return, despite the temporary stay of other proceedings in this case, serves the interest of justice here.  At this stage, the Court is not ruling on the propriety of the government's decision to request a stay right before seeking to postpone Bin Lep's arraignment in his commission proceedings.  But, as Bin Lep points out, the only discernible benefit of obtaining a complete stay prior to August 30, when he is scheduled to be arraigned, would be to relieve the government of its obligation to update the factual return.  See Abeyance Opp'n at 18.  Hence, ordering the government to fulfill its pre-existing duty to complete this task serves to mitigate the effects of any tactical attempt—to the extent there was one—to "frustrate this Court's jurisdiction" and "circumvent" Bin Lep's habeas case.  See Hr'g Tr. 37:4–11; 53:17–23.

## Conclusion

For the foregoing reasons, the Court concludes that an abstention ruling would be

---

[8] To be sure, this approach has not been universally followed.  See Obaydullah v. Bush, 08-cv-1173, Min. Order (Nov. 21, 2008) (suspending factual return due date pending resolution of the government's abeyance motion). In Obaydullah v. Bush, however, the government specifically asked the Court to suspend the due date for the factual return to avoid "unnecessarily exposing classified material."  Resp'ts' Mot. to Dismiss or Hold Pet. in Abeyance [ECF No. 33-1] at 15 n.7, id.  Although the government has made a similar argument in passing in its abeyance motion here, see Abeyance Mot. at 2, it did not raise the issue at the April 27 hearing, when pressed about the factual return.  Hence, absent any concrete argument to this effect, the Court has no reason to believe that simply requiring the government to update the 2009 factual return will involve any measurable risk.  Cf. al-Anazi, 370 F. Supp. 2d at 199–200.

premature at this juncture, and that the better course is to see if Bin Lep's arraignment proceeds as the government proffers it will, before the Court decides if abstention is warranted. Accordingly, the Court will stay all proceedings in this case until September 1, 2021, except for the filing of the updated factual return, which is due on July 16, 2021. A separate order will issue on this date.

/s/

JOHN D. BATES
United States District Judge

Dated: June 25, 2021