# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| MOHAMMED NAZIR BIN LEP,<br><br>  Petitioner,<br><br>  v.<br><br>JOSEPH R. BIDEN et al.,<br><br>  Respondents. | Civil Action No. 20-3344 (JDB) |

## MEMORANDUM OPINION

Before the Court are two motions: respondents' motion to hold petitioner Mohammed Nazir Bin Lep's habeas petition in abeyance until after his military commission proceedings are complete—Resp'ts' Mot. to Hold Pet. in Abeyance Pending Completion of Military Commission Proceedings [ECF No. 62] ("Abeyance Mot.")—and Bin Lep's cross-motion to enjoin the military commission proceedings, Cross-Mot. for Permanent Inj. [ECF No. 64] ("Cross-Mot."). Because Bin Lep's military commission proceedings have begun and are moving forward, and because this Court is bound by the principles articulated in Schlesinger v. Councilman, 420 U.S. 738 (1975), and In re Al-Nashiri (Al-Nashiri II), 835 F.3d 110 (D.C. Cir. 2016), the Court will grant respondents' Abeyance Motion, deny Bin Lep's Cross-Motion as moot, and abstain from adjudicating the majority of the claims in Bin Lep's habeas petition. But because the Court's consideration of two of Bin Lep's habeas claims—specifically the challenges to his High Value Detainee designation and respondents' alleged interference with his ability to request a mixed medical commission—is not likely to interfere with Bin Lep's military commission proceedings, the Court will permit those two claims to proceed in this habeas litigation.

1

**Background**

I.      **Bin Lep's Detention and the Habeas Petition**

Bin Lep is a Malaysian citizen who was seized by local authorities in Thailand in 2003 and then transferred to CIA custody due to his alleged participation in al Qaeda operations against the United States.  Mem. Op., June 25, 2021 [ECF No. 86] ("June 2021 Mem. Op.") at 2; Pet. for Writ of Habeas Corpus [ECF No. 40] ("Habeas Pet.") ¶¶ 1, 8, 16.  The United States has held Bin Lep at the U.S. Naval Station in Guantanamo Bay since 2006.  June 2021 Mem. Op. at 2; Habeas Pet. ¶ 8.  In 2017, prosecutors swore charges against Bin Lep related to his alleged participation in bombings in Indonesia.  Habeas Pet. ¶¶ 23–24.[1]  Pursuant to Rule 601 of the Rules for Military Commissions ("RMC"), the swearing of charges against an individual is just one step in initiating a trial by a military commission; the sworn charges must also be referred to a specific military commission by the appropriate convening authority.  See RMC 601(a) Discussion; see also June 2021 Mem. Op. at 2–4 (further describing the procedure for initiating military commission proceedings and the procedural history of the charges against Bin Lep).

Bin Lep filed the habeas petition at issue in this proceeding in October 2020.  See generally Habeas Pet.  At that time, the sworn charges against him had not yet been referred to a military commission.  Id. ¶¶ 26–27.  Bin Lep's habeas petition raises 10 claims.  Id. ¶¶ 66–96.  The first two claims are that respondents violated Bin Lep's Sixth Amendment right to a speedy trial and Fifth Amendment right to due process by holding him in custody for over a decade without charges, notice, or an opportunity to be heard.  Id. ¶¶ 66–70.  Bin Lep's third claim is that his extended custody violated the prohibition in the Detainee Treatment Act ("DTA") on cruel, inhuman, or degrading treatment or punishment as well as his fair trial rights under the Military

---

[1] The government supplemented these charges in 2019.  June 2021 Mem. Op. at 3; Martins' Decl. [ECF No. 51-1] ¶¶ 5–17.

2

Commissions Act ("MCA") and the MCA's implementing rules.  Id. ¶¶ 72–75.  The fourth claim is that the MCA violates the Constitution's guarantee of equal justice by providing that military commission charges may be levied against only "alien [unprivileged] enemy belligerents." Id. ¶ 78 (quoting 10 U.S.C. § 948c).  Bin Lep's fifth claim is that he is not an alien unprivileged enemy belligerent as defined by 10 U.S.C. § 948a(7).  Id. ¶¶ 80–81.

The sixth claim in Bin Lep's habeas petition is that his alleged offenses were not associated with "hostilities" as defined under 10 U.S.C. § 948a(9), and therefore, under 10 U.S.C. § 950p(c), he may not be tried by a military commission.  Id. ¶¶ 83–84.  He also argues that his continued detention violates the Authorization for the Use of Military Force ("AUMF"), Pub. L. No. 107-40, 115 Stat. 224 (2001) (codified at 50 U.S.C. § 1541 note), since the AUMF permits the government to detain Bin Lep only if he was a part of or substantially supported al Qaeda or associated forces engaged in hostilities against the United States or its coalition partners, and he is innocent of those offenses.  Id. ¶¶ 86–87.  Bin Lep's eighth claim is that charging him with the conspiracy offense codified at 10 U.S.C. § 950t(29) violates the Constitution's Ex Post Facto Clause.  Id. ¶ 89.  His ninth claim is that designating him as a High Value Detainee violates the Fifth Amendment, Eighth Amendment, and DTA's prohibition on cruel and arbitrary punishment. Id. ¶¶ 91–93.  The tenth and final claim is that respondents violated U.S. Army Regulation ("AR") 190-8 by preventing Bin Lep from accessing a mixed medical commission that could deem his repatriation to Malaysia necessary due to his allegedly poor health.  See id. ¶¶ 53–57, 95–96.

## II.  Litigation Following the Referral of Charges Against Bin Lep

In January 2021, the Convening Authority, Office of Military Commissions, referred to a military commission the sworn charges against Bin Lep and two co-defendants.  June 2021 Mem. Op. at 1; Joint Status Rep., Jan. 28, 2021 [ECF No. 60] at 1.  Respondents filed the Abeyance

Motion shortly thereafter, arguing that the Convening Authority's referral of the charges signified that the military commission proceedings against Bin Lep had officially commenced and that the Court should stay this habeas proceeding to avoid interfering with the military process.  See generally Abeyance Mot.

RMC 707 provides that defendants must generally be arraigned "[w]ithin 30 days of the service of charges," and the arraignments in this case were originally scheduled for February 2021, see App'x [ECF No. 71] at 1.  At the end of January, however, Bin Lep's co-defendants requested that the arraignments be continued due to the COVID-19 pandemic and their counsels' lack of resources.  App'x at 1–2.  The government agreed that a continuance was appropriate in light of the pandemic, but Bin Lep opposed any extension.  Id. at 2.  Colonel Charles L. Pritchard, Jr.— the presiding judge over Bin Lep's military commission proceeding at the time—granted an indefinite continuance "until the end of summer 2021."  Id. at 6–7.

Bin Lep subsequently filed an opposition to respondents' Abeyance Motion, see generally Pet.'s Resp. to Resp'ts' Mot. to Stay [ECF No. 72-1] ("Opp'n to Abeyance Mot."), and his Cross-Motion to permanently enjoin the military commission proceeding, see generally Cross-Mot.  With regards to the Abeyance Motion, Bin Lep argued, among other things, that abstention was inappropriate since his military commission proceedings had been continued indefinitely.  Opp'n to Abeyance Mot. at 1.  In support of his motion to enjoin the military commission, he argued that the continuance violated his speedy trial rights under RMC 707 and rendered the proceedings unlawful.  Mem. of L. in Supp. of Pet.'s Cross-Mot. for a Permanent Inj. [ECF No. 72-2] ("Mem. in Supp. of Cross-Mot.") at 2.  On April 16, Colonel Pritchard scheduled Bin Lep's arraignment before the military commission for August 30, 2021.  Am. Arraignment Order, United States v. Nurjaman, AE 0002.008 (Military Comm'ns Trial Judiciary Apr. 16, 2021) [ECF No. 76-1] at 2.

In April 2021, this Court held a hearing on the Abeyance Motion and Cross-Motion.  See generally Mots. Hr'g Tr. [ECF No. 77].

Shortly thereafter, Bin Lep informed the Court that Colonel Pritchard would no longer be presiding over his military tribunal and would be replaced by Commander Hayes C. Larsen. Pet'r's Suppl. Br. in Opp'n to Resp'ts' Mot. to Stay [ECF No. 80] ("Suppl. Opp'n to Abeyance Mot.") at 3.  Bin Lep argues that Colonel Pritchard's replacement was pre-planned and this fact "necessarily call[s] COL Pritchard's impartiality on matters of scheduling into question."  Id. at 2. Respondents deny this claim, arguing that "Judge Pritchard had no advance notice that he would be removed from the MCA case" at the time he continued Bin Lep's arraignment.  Notice of Filing in Resp. to Min. Order of May 21, 2021 [ECF No. 83] at 1–2.  According to a declaration respondents filed, Colonel Pritchard was aware in January 2021—prior to his assignment as the presiding judge of Bin Lep's commission—of a pending reassignment to Germany later that summer, but the ultimate decision to remove Colonel Pritchard from Bin Lep's case was not communicated to Colonel Pritchard until May 6, 2021—after Colonel Pritchard decided on April 16 to reschedule Bin Lep's arraignment to August 30.  Decl. of Douglas K. Watkins [ECF No. 83-1] at 2–3; see Am. Arraignment Order, United States v. Nurjaman, AE 0002.008.

After reviewing additional briefing, e.g., Resp'ts' Opp'n to Pet'r's Suppl. Br. [ECF No 81] ("Suppl. Supp. of Abeyance Mot."); Pet'r's Suppl. Reply Br. in Opp'n to Resp'ts' Mot. to Stay [ECF No 84] ("Suppl. Reply in Opp'n to Abeyance Mot."), this Court issued an order staying the habeas proceedings in this case through September 1, 2021 and ordering the parties to file a joint status report by not later than August 31, 2021, informing the Court whether Bin Lep had been arraigned before the military commission.  Order, June 25, 2021 [ECF No. 85] at 1.

### III.    Developments Since the Court Issued the Stay

The parties filed the status report in accordance with this Court's instructions.  See Joint Status Report Pursuant to Order of June 25, 2021 [ECF No. 92] ("Aug. 2021 Status Report").  The report stated that Bin Lep and his co-defendants were arraigned on August 31, 2021.  Id. at 1.  According to Bin Lep, however, "[t]his procedure was an 'arraignment' in name only" since Bin Lep did not receive an adequate translation of the proceedings as they were ongoing.  Id. at 5–6.  Bin Lep also informed the Court that Commander Larsen had denied his motion to dismiss the charges against him due to the alleged violation of RMC 707 and Colonel Pritchard's alleged bias on matters of scheduling.  Id. at 6–7; see also Ruling, United States v. Nurjaman, AE 0002.031 (Military Comm'ns Trial Judiciary Aug. 19, 2021) [ECF No. 92-1] ("Mot. to Dismiss Decision").  Upon consideration of these developments, the Court ordered the parties to file another joint status report by not later than October 2, 2021 and extended the stay of Bin Lep's habeas proceedings until that date.  Min. Order, Sept. 2, 2021.

The parties' October joint status report discussed the briefing of Bin Lep's motion for a new arraignment as well as other pending motions before the military commission.  Joint Status Report Pursuant to Order of Sept. 2, 2021 [ECF No. 94] ("Oct. 2021 Status Report") at 1–2.  On November 8, respondents submitted an order from Bin Lep's military commission proceedings denying Bin Lep's motion for a new arraignment.  Notice of Filing of Military Judge Order Denying Mot. for New Arraignment [ECF No. 95] at 1.  The commission found that Bin Lep "failed to show the proceedings were fundamentally unfair" and that Bin Lep "has been properly arraigned."  Ruling, United States v. Nurjaman, AE 002.043 (Military Comm'ns Trial Judiciary Nov. 4, 2021) [ECF No. 95-1] ("Arraignment Decision") at 11.  On November 15, Bin Lep filed a supplemental status report reiterating his challenges to the military commission proceedings and

expressing his disagreement with the commission's rulings.  See generally Pet'r's Suppl. Status Report [ECF No. 96] ("Bin Lep's Suppl. Status Report").  On December 16, with  the Court's leave, Bin Lep filed declarations further supporting his argument that his arraignment was inadequate.  See generally Min. Order, December 16, 2021; Pet'r's Mot. for Leave to File Documents [ECF No. 98].

Respondents responded to Bin Lep's supplemental filings on December 20, 2021.  See generally Resp'ts' Notice as to Pet'r's Suppl. Filings Regarding Arraignment Proceeding [ECF No. 100] ("Resp'ts' Suppl. Filing").  Respondents emphasized that the arguments Bin Lep raises about the sufficiency of his arraignment "fall within the abstention doctrine."  Id. at 1. Respondents also noted that there have been additional motions filed regarding the interpreters in Bin Lep's military commission proceeding that are not yet publicly available.  Id. at 2 ("Those filings confirm that the alleged conduct of the Prosecution and the 'Prosecutor's Interpreter' in the arraignment proceeding not simply could be, but actually is being litigated before the Military Judge under the MCA.").  The Abeyance Motion and Cross-Motion are now fully briefed and ripe for this Court's decision.

## Legal Standards

In Councilman, the Supreme Court examined "the proper relationship between the military justice system established by Congress and . . . Art. III courts" and concluded "that the balance of factors governing exercise of equitable jurisdiction by federal courts normally weighs against intervention . . . in pending court-martial proceedings."  420 U.S. at 740.  In Al-Nashiri II, the D.C. Circuit considered Councilman's conclusion when deciding whether to abstain in favor of a military commission proceeding at Guantanamo Bay and "identified 'two comity considerations' that drive the abstention analysis."  al-Baluchi v. Esper, 392 F. Supp. 3d 46, 56 (D.D.C. 2019)

(quoting Al-Nashiri II, 835 F.3d at 121).  As Al-Nashiri II explains, to abstain in favor of an alternative system, a court "must be assured of both the adequacy of the alternative system in protecting the rights of defendants and the importance of the interests served by allowing that system to proceed uninterrupted by federal courts."  835 F.3d at 121.

With regards to adequacy, Al-Nashiri II noted that "[t]he current system of military commissions at Guantanamo Bay 'is the product of an extended dialogue among the President, the Congress, and the Supreme Court.'"  Id. at 114 (quoting In re Al-Nashiri (Al-Nashiri I), 791 F.3d 71, 73 (D.C. Cir. 2015)).  In response to the Supreme Court's decision in Hamdan v. Rumsfeld, 548 U.S. 557 (2006), Congress passed the MCA and established an "'integrated' scheme dictating how enemy belligerents are to be tried and obtain appellate review" that was sanctioned by two Presidents and "is virtually identical to the review system for courts-martial approved by the [Supreme] Court in Councilman."  Al-Nashiri II, 835 F.3d at 122 (quoting Councilman, 420 U.S. at 758).  Hence, "it must be assumed" that the military commission proceedings are adequate, id. at 123 (quoting Councilman, 420 U.S. at 758), and a district court should not "determine whether pretrial intervention is warranted by examining the on-the-ground performance of the system that Congress and the Executive have established," id.

Regarding the importance of allowing the military commission proceedings in Al-Nashiri II to continue without interference, the D.C. Circuit identified a "vital interest" in not "unduly imping[ing] on the prerogatives of the political branches in the sensitive realm of national security. Comity demands restraint in such circumstances, just as it requires federal courts to avoid interfering with the functions of states and the military."  Id. at 124 (footnote omitted).  Al-Nashiri II also noted that the MCA provides for post-conviction review by the D.C. Circuit and "the eventual involvement of an Article III appellate court lessens the need for immediate intervention

because an Article III court can remedy any errors on appeal." Id. at 127; see also id. at 124 ("By providing for direct Article III review . . . on appeal from any conviction in the military system, Congress and the President implicitly instructed that judicial review should not take place before that system has completed its work.").

Al-Nashiri II's conclusions about the adequacy of the military commission proceedings under the MCA and the importance of permitting such proceedings to work without interference were "categorical" and apply to all military commissions conducted under the MCA at Guantanamo Bay. al-Baluchi, 392 F. Supp. 3d at 57. Accordingly, under Al-Nashiri II, a court should grant a motion to "abstain in favor of ongoing military-commission proceedings" established under the MCA unless "any features unique to [petitioner's] case" indicate that abstention is inappropriate. 835 F.3d at 128; accord al-Baluchi, 587 F. Supp. 2d at 57 ("[C]ourts in this circuit are to abstain from resolving pre-conviction habeas petitions arising from MCA commissions unless the particular facts of a petitioner's case suggest that abstention is unwarranted.").

The exceptions to Councilman's abstention doctrine are "narrow and limited." Al-Nashiri II, 835 F.3d at 128. "In particular, a federal court may intervene where a [petitioner] shows that 'extraordinary circumstances' both present the threat of 'great and immediate' injury [that is also irreparable] and render the alternative tribunal 'incapable of fairly and fully adjudicating the federal issues before it.'" Id. (quoting Kugler v. Helfant, 421 U.S. 117, 123–24 (1975)). "[S]uch circumstances must be 'extraordinary' in the sense of creating an extraordinarily pressing need for immediate federal equitable relief, not merely in the sense of presenting a highly unusual factual situation." Kugler, 421 U.S. at 125. "[C]ertain types of injury, in particular, the cost, anxiety, and inconvenience of having to defend against a single criminal prosecution, [cannot] by themselves

be considered 'irreparable' in the special legal sense of that term." Al-Nashiri II, 835 F.3d at 128 (second alteration in original) (quoting Councilman, 420 U.S. at 755).

Another important exception to Councilman abstention is "for a particular kind of extraordinary circumstance: claims arising from 'express statutory or constitutional language that gives [petitioner] a right not to be tried' at all." al-Baluchi, 392 F. Supp. 3d at 58 (alteration in original) (quoting Al-Nashiri II, 835 F.3d at 131). "Courts have recognized only four types of proceedings that rise to this level: (i) trials that would violate the double jeopardy prohibition; (ii) trials for conduct protected by the speech or debate clause; (iii) trials without a grand jury indictment in violation of the Fifth Amendment; and (iv) the 'status exception,' where circumstances raise 'substantial arguments' as to whether certain individuals may be tried by the military at all." Id. at 58 (citations omitted) (quoting Al-Nashiri II, 835 F.3d at 133). The most relevant of these exceptions is the status exception. Although the "precise contours of this 'status' exception are unclear," Al-Nashiri II, 835 F.3d at 133, the D.C. Circuit in Al-Nashiri II identified two potential applications: "First, where the military attempts to court-martial a defendant who is 'undisputed[ly]' a civilian . . . . And second, the Hamdan Court suggested, in dicta, that the status exception might apply to Hamdan's challenge, which alleged that his military commission was not 'regularly constituted' under the Geneva Conventions," id. at 133–34 (first alteration in original).

Al-Nashiri II also commented on the possibility that "an unreasonable delay in military-commission proceedings could come within an exception to abstention." Id. at 135. The court "did not definitively recognize such an exception, [however,] let alone define its contours." Mem. Op., Dec. 14, 2020 [ECF No. 56] at 8 n.3. Specifically, the D.C. Circuit stated that it "need not decide" whether such an exception exists because the delay in Al-Nashiri's case was not unreasonable. Al-Nashiri II, 835 F.3d at 135. But the D.C. Circuit did cite Nissan Motor Corp. in

U.S.A. v. Harding, 739 F.2d 1005 (5th Cir. 1984), which states that "[t]he kind of delay that argues against abstention [in favor of state proceedings] is delay that might significantly impair constitutional rights, for example, where lengthy state proceedings will chill first amendment rights, or voting rights," Nissan Motor Corp., 739 F.2d at 1011 (citations omitted); see also Al-Nashiri II, 835 F.3d at 135 (citing Nissan Motor Corp. for this principle).

In addition to these exceptions, there are two other relevant exceptions that were not discussed in Al-Nashiri II but that have been applied when deciding whether to abstain in favor of state criminal proceedings.  The first is an exception for bad faith.  In Younger v. Harris, 401 U.S. 37 (1971), the Supreme Court noted that bad faith or harassment on the part of the prosecuting officials could merit an exception to abstention.  Id. at 49; see also Perez v. Ledesma, 401 U.S. 82, 85 (1971) ("Only in cases of proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction and perhaps in other extraordinary circumstances where irreparable injury can be shown is federal injunctive relief against pending state prosecutions appropriate.").  The second relates to timing.  As the Supreme Court has explained, "principles of comity and federalism do not require that a federal court abandon jurisdiction it has properly acquired simply because a similar suit is later filed in a state court." Town of Lockport v. Citizens for Cmty. Action at Loc. Level, Inc., 430 U.S. 259, 264 n.8 (1977).

Even when Councilman abstention principles apply to a case and there is no applicable exception, "abstention is appropriate only to the extent that th[e] Court's consideration of petitioner's [habeas claims] would interfere with the military commission proceeding."  Khadr v. Bush (Khadr I), 587 F. Supp. 2d 225, 230 (D.D.C. 2008).  A district court must therefore analyze each claim in a petitioner's habeas petition to determine if the court's adjudication of that claim would interfere with the military commission.  To answer this question, a court asks whether

petitioner's habeas claims "have been, will be or, at the very least, can be raised in the military commission proceeding and the subsequent appeals process," id., or, in other words, whether "the claims raised in [the] habeas petition could overlap with the military commission's inquiries," Khadr v. Obama (Khadr III), 724 F. Supp. 2d 61, 66 (D.D.C. 2010).

**Analysis**

The Court's analysis will proceed in four parts.  First, the Court will consider whether the abstention principles discussed in Al-Nashiri II apply to Bin Lep's military proceedings.  Next, the Court will determine if there are any features unique to Bin Lep's case that warrant an exception to abstention.  Third, the Court will review Bin Lep's habeas claims to answer whether each claim is one that can be raised before his military commission.  Finally, the Court will review its jurisdiction over the remainder of Bin Lep's habeas petition.

## I.     The Abstention Principles Discussed in Al-Nashiri II Apply Because Bin Lep's Military Commission Proceedings Have Begun and Are Moving Forward

Like the military commission in Al-Nashiri II, Bin Lep's military commission was constituted under the authority of the MCA to try Bin Lep, a Guantanamo detainee, for alleged violations of the law of war.  See Abeyance Mot. at 1; Al-Nashiri II, 835 F.3d at 114.  As such, Al-Nashiri II's "categorical" findings regarding the adequacy of the military commission proceedings and the importance of permitting these proceedings to continue free from interference apply in Bin Lep's case and weigh in favor of granting the Abeyance Motion.  al-Baluchi, 392 F. Supp. 3d at 57.

In his first brief in opposition to the Abeyance Motion, Bin Lep argued that "the abstention doctrine on which [r]espondents rely only applies when the relief sought in a habeas case will cause undue interference with ongoing military commission proceedings. Here, there are no ongoing military commission proceedings."  Opp'n to Abeyance Mot. at 1.  Bin Lep also argued

that "there may never be any such proceedings" because the Biden Administration announced in February that it would conduct a formal review of Guantanamo Bay with the goal of closing the facility before the end of President Biden's time in office.  Id. at 5; see also June 2021 Mem. Op. at 14 (describing the announcement and the "real uncertainty" it created about Bin Lep's military commission proceedings).

But despite President Biden's announced review of Guantanamo Bay, the facility still operates, and military commissions are ongoing.  See Ellie Kaufman, Biden Administration Has Made Little Progress Towards Goal of Closing Notorious Guantanamo Bay Prison, CNN (Sept. 19, 2021, 8:01 AM), https://www.cnn.com/2021/09/19/politics/guantanamo-state-of-play/index.html.  And much has changed since Bin Lep filed his initial response to the Abeyance Motion in March 2021.  Since then, Bin Lep's military commission has completed his arraignment, Aug. 2021 Status Report at 1; the government has produced over 30,000 pages of discovery,[2] Resp'ts' Suppl. Filing at 3 n.3; and Commander Larsen has decided several motions, including Bin Lep's motion to dismiss the charges against him due to the alleged violation of RMC 707 and Colonel Pritchard's alleged bias on scheduling, Aug. 2021 Status Report at 7; see also Mot. to Dismiss Decision at 4, as well as Bin Lep's motion for a new arraignment, Notice of Filing of Military Judge Order Denying Mot. for New Arraignment at 1; see also Arraignment Decision at 11–12.  The most recent scheduling order in Bin Lep's case also indicates that a hearing is scheduled to begin before the military commission on February 28, 2022.  Scheduling Order, United States v. Nurjaman, AE 0028.001 (Military Comm'ns Trial Judiciary Dec. 9, 2021), at 1, available at https://www.mc.mil/Portals/0/pdfs/Nurjaman/Nurjaman%20(AE0028.001(TJ)).pdf.

---

[2] In fact, the government has completed its discovery obligations as to unclassified information.  Resp'ts' Suppl. Filing at 3 n.3; Gov't Notice, United States v. Nurjaman, AE 0024.017 (Military Comm'ns Trial Judiciary Dec. 17, 2021), available at https://www.mc.mil/Portals/0/pdfs/Nurjaman/Nurjaman%20(AE0024.017(GOV)).pdf.

Hence, Bin Lep can no longer reasonably claim that "there are no ongoing military commission proceedings" against him.  Opp'n to Abeyance Mot. at 1.

It is particularly significant that Bin Lep has now been arraigned.  As this Court previously explained, "before arraignment, the Convening Authority can stop and restart Bin Lep's military commission proceeding largely without consequence, but after arraignment, the Convening Authority cannot."  June 2021 Mem. Op. at 15–16; see also RMC 604(b) Discussion ("Before arraignment, there are many reasons for a withdrawal which will not preclude another referral. . . . Charges withdrawn after arraignment may be referred to another military commission where withdrawal was not for an improper reason and the accused suffers no unfair prejudice.").  Although Bin Lep argues that the arraignment he received was inadequate because he did not receive a reliable translation, Bin Lep's Suppl. Status Report at 3, this allegation does not alter the Court's conclusion that his military commission proceedings are firmly underway.  As this Court has noted, "it is really the passage, rather than the substance, of arraignment that is most relevant for" deciding whether to abstain in favor of a military commission proceeding.[3]  June 2021 Mem. Op. at 15.  With his arraignment complete, this Court is bound by Al-Nashiri II to "abstain from resolving [Bin Lep's] pre-conviction habeas petition[] . . . unless the particular facts of [his] case suggest that abstention is unwarranted."  al-Baluchi, 392 F. Supp. 3d at 57.

To dispute the conclusion that Al-Nashiri II requires this Court to abstain from adjudicating his habeas petition in the absence of an applicable exception, Bin Lep makes several arguments that require either limiting Al-Nashiri II to its facts or overturning it altogether.  For instance, he claims that Al-Nashiri II grants district courts "the discretion to abstain" in favor of ongoing

---

[3] Arguments about the adequacy of Bin Lep's arraignment are better left to the military commission proceeding—which has already rejected Bin Lep's motion for a new arraignment, Arraignment Decision at 11—and to the D.C. Circuit on appeal if Bin Lep is convicted.

military commission proceedings established under the MCA but that "[t]hey are not required to do so." Bin Lep's Suppl. Status Report at 5. Bin Lep appears to base this misreading of <u>Al-Nashiri II</u> on the fact that the D.C. Circuit reviewed the district court's decision to abstain in favor of the military system under the abuse of discretion standard. <u>See</u> <u>id.</u>; 835 F.3d at 118. But as this Court and others have noted, <u>Al-Nashiri II</u>'s "findings about the importance and adequacy considerations" governing the decision to abstain were "categorical" and apply to "<u>all</u> military commissions under the MCA." <u>al-Baluchi</u>, 392 F. Supp. 3d at 57.

Another argument Bin Lep makes against <u>Al-Nashiri II</u> is that "abstention arguments lose their force over time," meaning "[w]hatever cause there might have been to invoke abstention principles in ongoing military commission cases commenced fifteen, ten, or even five years ago, applying them here would" be unconstitutional. Opp'n to Abeyance Mot. at 2. This argument has several flaws. As a threshold matter, at no point did <u>Al-Nashiri II</u> suggest that its conclusions about the adequacy of proceedings under the MCA and the importance of permitting those proceedings to continue without interference possessed an expiration date. Even if <u>Al-Nashiri II</u>'s conclusions were time sensitive, moreover, Bin Lep does not explain why this Court should find that they have grown stale now as opposed to in five or ten more years. And most importantly, Bin Lep does not offer any support for the proposition that <u>Al-Nashiri II</u> has become outdated in the less than six years since it was issued, and other courts have cited <u>Al-Nashiri II</u>'s conclusions as recently as 2019. <u>See</u> <u>Abdulrazzaq v. Trump</u>, 422 F. Supp. 3d 281, 293 (D.D.C. 2019); <u>al-Baluchi</u>, 392 F. Supp. 3d at 56–57. This Court accordingly rejects the suggestion that <u>Al-Nashiri II</u> is no longer good law.

Lastly, Bin Lep directly attacks <u>Al-Nashiri II</u>'s adequacy and importance conclusions, arguing that this Court should deny respondents' abeyance motion because Bin Lep's military

commission proceedings "have none of the remedial authorities or independence that would be necessary for them" to substitute for habeas review, Opp'n to Abeyance Mot. at 17, and because respondents "are unable to explain [the importance of abstaining] with anything more than speculative abstractions," id. at 14; see also Suppl. Opp'n to Abeyance Mot. at 12–15 (suggesting, in contrast to Al-Nashiri II, that a court's decision to abstain should be based on "prudential reason[s]" that relate to whether an Article III court or a military commission is better equipped to resolve the issues raised by Guantanamo Bay detainees).  But under Al-Nashiri II, Bin Lep's military commission "is sufficiently adequate to point in favor of abstention," 835 F.3d at 123, and there is a "vital interest" in not "unduly imping[ing] on the prerogatives of the political branches in the sensitive realm of national security," id. at 124.  The D.C. Circuit's conclusions are binding on this Court, and Bin Lep may not re-litigate them here.  Hence, following Al-Nashiri II's instruction, this Court will grant respondents' Abeyance Motion unless there are any features unique to Bin Lep's case that fall within one of the limited exceptions to Councilman abstention. See id. at 128.

## II.     No Abstention Exceptions Apply to Bin Lep's Case

Al-Nashiri II discussed three potential exceptions to Councilman abstention: (A) the exception for "'extraordinary circumstances' [that] both present the threat of 'great and immediate injury' [that is also irreparable] and render the alternative tribunal 'incapable of fairly and fully adjudicating the federal issues before it,'" Al-Nashiri II, 835 F.3d at 128 (quoting Kugler, 421 U.S. at 123–24); (B) the exception for a right not to be tried by a military commission, id. at 131; and (C) the potential exception for unreasonable delay in military commission proceedings, id. at 135. Bin Lep also argues that two other exceptions—(D) the exception for prosecutorial bad faith or harassment, Younger, 401 U.S. at 49, and (E) the timing exception counseling against abstention after federal proceedings have already begun, Town of Lockport, 430 U.S. at 264 n.8—apply in

16

the MCA context and require denial of the Abeyance Motion.  Bin Lep's case does not fit within

any of these exceptions, which the Court will address in the order set out above.

> A.  <u>The Extraordinary Circumstances Exception</u>

Bin Lep dedicates almost all of his briefing to discussing the many perceived defects in his

military commission proceedings that he claims require this Court to seize exclusive control of his

case.  For instance, he argues that "[r]espondents' willful disregard for the speedy trial clock

renders [his] continued prosecution unlawful."  Mem. in Supp. of Cross-Mot. at 6; <u>see also</u> Bin

Lep's Suppl. Status Report at 5 (citing the commission's denial of Bin Lep's motion to dismiss for

violation of speedy trial rights as a reason to deny the Abeyance Motion).  He also claims that the

alleged defects in his arraignment and Commander Larsen's denial of his motion for a new

arraignment are reasons for this Court to hold that Bin Lep's military commission cannot fairly

and fully adjudicate the federal issues before it.  <u>See</u> Bin Lep's Suppl. Status Report at 5 ("If . . .

what transpired in Guantanamo is all the rules require, then this Court has been given no good faith

basis to abstain.").

But even if the Court were to assume that Bin Lep is correct that the military commission's

rulings are so deficient as to demonstrate that the commission lacks any ability to fairly adjudicate

his case, Bin Lep has failed to satisfy the other requirement for invoking the "extraordinary

circumstances" exception to <u>Councilman</u> abstention: establishing the threat of "'great, immediate

and irreparable' injury justifying a federal court's intervention in ongoing criminal proceedings."

<u>Al-Nashiri II</u>, 835 F.3d at 128 (quoting <u>Moore v. Sims</u>, 442 U.S. 415, 433 (1979)).  To begin, Bin

Lep may not be convicted.  But if it is true that the military commission has erroneously decided

these issues and he is ultimately convicted, that conviction still must withstand additional review

within the military commission process.  <u>See id.</u> at 122 (noting that the convening authority "may

review the guilty finding and set it aside, or reduce it to a finding of guilty of a lesser-included

offense" and that "[a] final guilty finding, as modified by the convening authority, will then be reviewed by the [Court of Military Commission Review] unless the defendant" waives this right). And after this extended process is completed, Bin Lep may appeal to the D.C. Circuit.  See 10 U.S.C. § 950g(a) ("Except as provided . . . the United States Court of Appeals for the District of Columbia Circuit shall have exclusive jurisdiction to determine the validity of a final judgment rendered by a military commission . . . ."); see also Al-Nashiri II, 835 F.3d at 122 ("The defendant may appeal the [Court of Military Commission Review's] decision to our court, and we are empowered to review all questions of law, including the sufficiency of the evidence.").

While the Court is sympathetic to "the cost, anxiety, and inconvenience of having to defend against a single criminal prosecution," these injuries are the exact ones that the Supreme Court held cannot "by themselves be considered 'irreparable' in the special legal sense of that term." Al-Nashiri II, 835 F.3d at 128 (quoting Councilman, 420 U.S. at 755).  Bin Lep has demonstrated "no harm other than that attendant to resolution of his case in the military court system," id. (quoting Councilman, 420 U.S. at 758), and "even though those harms are 'often of serious proportions,'" id. (quoting Councilman, 420 U.S. at 754), they do not displace this Court's responsibility to abstain.

Bin Lep also argues that his case falls within the extraordinary circumstances exception because his military commission proceedings have been infected by judicial bias.  Bin Lep Suppl. Status Rep. at 5.  This claim differs from Bin Lep's complaints about the alleged speedy trial violation and insufficient arraignment because, as the D.C. Circuit has acknowledged, questions of judicial bias should be resolved "at the earliest opportunity," and judicial bias can in some cases create irreparable injuries incapable of resolution on appeal.  In re Al-Nashiri (Al-Nashiri III), 921 F.3d 224, 238 (D.C. Cir. 2019).  Bin Lep's allegations of judicial bias stem from the fact that

Colonel Pritchard was aware of a pending reassignment when he issued three orders that collectively continued Bin Lep's arraignment until August 2021.  See Suppl. Reply in Opp'n to Abeyance Mot. at 1.  According to Bin Lep, "[a] reasonable observer, aware of all the relevant facts, could conclude that COL Pritchard's eagerness to postpone all proceedings in [Bin Lep]'s case until the 'end of summer' was intended to accommodate his undisclosed plans to leave the case by the summer," id. at 3, and "[a]ccomodating a judge's personal interests and future career plans is an improper consideration per se for excluding time from the speedy trial clock," id. at 4.

Respondents, in contrast, argue that "a reasonable and informed observer would grasp the realities of the COVID-19 pandemic," Suppl. Supp. of Abeyance Mot. at 4, and that Bin Lep's "bias contention ultimately boils down to disagreement with Judge Pritchard's RMC 707 analysis on the merits," id. at 21.  More fundamentally, respondents argue that Bin Lep's bias contention does not alter this Court's responsibility to abstain in favor of the military commission since he "can seek relief from Judge Larsen from the allegedly improper RMC 707 continuance."  Id. at 3.  Respondents also assert that if the Court were to decline to abstain, the Court would lack subject-matter jurisdiction to decide Bin Lep's claim since "the statutory exclusivity of the D.C. Circuit's jurisdiction over final judgments from military commission proceedings implies that [Bin Lep]'s bias contention is to be reviewed by the Court of Appeals after the military commission case has concluded—not by this Court before final judgment."  Id. at 4; see also 10 U.S.C. § 950g(a).

The Court need not decide whether respondents are correct that it lacks jurisdiction to adjudicate Bin Lep's bias claim against Colonel Pritchard since the Court concludes that it must abstain.  See Abdulrazzaq, 422 F. Supp. 3d at 292.  There are two reasons why the particular facts of Bin Lep's bias claim do not fall within the extraordinary circumstances exception to Councilman abstention.

First, Bin Lep's allegations of bias are targeted toward a judge who is no longer presiding over his case, and "Bin Lep has not established that Commander Larsen is incapable of addressing allegations concerning Colonel Pritchard's bias in the first instance." June 2021 Mem. Op. at 17. Under RMC 905(f), "[o]n request of any party or sua sponte, the military judge may, prior to authentication of the record of trial, reconsider any ruling, other than one amounting to a finding of not guilty, made by the military judge." Indeed, Bin Lep filed a motion for reconsideration and dismissal due to Colonel Pritchard's alleged bias, and Commander Larsen denied the requested relief. See Mot. to Dismiss Decision at 3–4.[4]

Bin Lep not only disagrees with Commander Larsen's decision, but argues that the decision "leaves no doubt" that this Court is "the only forum in which the substantial question of judicial bias infecting [Bin Lep]'s case can be fairly and promptly resolved." Aug. 2021 Status Report at 9. According to Bin Lep, the replacement of Colonel Pritchard demonstrates that "the much-touted 'separation' between the various military commission system actors, and the Military Commission Trial Judiciary in particular, is illusory," Suppl. Opp'n to Abeyance Mot. at 1, and that "[t]he military commission system long ago forfeited any claim it might otherwise ha[ve] had to be trusted with deciding judicial conduct issues," Suppl. Reply in Opp'n to Abeyance Mot. at 18. In other words, Commander Larsen is incapable of resolving the federal issues Bin Lep raises because Commander Larsen is a member of a military commission system that lacks the constitutionally required degree of integrity and judicial independence. See Suppl. Opp'n to Abeyance Mot. at 4–6 (arguing that "[r]espondents' demonstrated control over the Military Commission Trial Judiciary

---

[4] While the Court is not reviewing the merits of Commander Larsen's decision, the Court notes that Commander Larsen concluded that "a standard Permanent Change of Station does not rise to the same level as seeking outside employment with an interested party or even pending retirement orders. This is a routine practice within the Armed Forces." Mot. to Dismiss Decision at 3 n.12. Commander Larsen consequently held that "the conjecture by [Bin Lep] of bias or appearance of bias in the rulings and orders by Judge Pritchard is unfounded based on a misunderstanding of his status." Id. at 3.

makes abstention improper" and that the Court "should not abstain on any question in favor of a process that is – both in theory and demonstrated fact – fully aligned with [r]espondents' interests"). That is a serious allegation that, if accepted, could justify denying the Abeyance Motion. But the Court cannot accept Bin Lep's argument for several reasons.

As an initial matter, Bin Lep never adequately explains what particular structural features render the military commission system constitutionally infirm. Indeed, at one point, he indicates that his allegations of bias stem not from the structure of the military commission system but from the unsatisfactory explanation he received for Colonel Pritchard's reassignment. See Suppl. Opp'n to Abeyance Mot. at 4 ("[W]hat is profoundly troubling about the sudden removal of COL Pritchard is not that [r]espondents have this power. . . . The troubling fact is the opacity with which they exercise that power."). But Bin Lep acknowledges that "[r]espondents are free to replace a military judge at any time for any reason prior to the 'assembly' of the military commission (i.e. voir dire of the members)."[5] Id. at 1. Colonel Pritchard's reassignment was thus in accordance with the rules, and Bin Lep neither points to any constitutional authority holding that the Chief Trial Judge must explain the reasoning for replacing a military judge before the assembly of a military commission nor explains why the Chief Trial Judge's failure to adequately explain the reasoning for replacing Colonel Pritchard means that Commander Larsen cannot capably and impartially adjudicate Bin Lep's case.

Three D.C. Circuit cases—Al-Nashiri III, In re al-Tamir, 993 F.3d 906 (D.C. Cir. 2021), and In re Mohammad, 866 F.3d 473 (D.C. Cir. 2017)—also support this Court's conclusion that

---

[5] RMC 505(e)(1) states that "[b]efore the military commission is assembled, the military judge may be changed by the Chief Trial Judge, without cause shown on the record." RMC 505(e)(2) states that "[a]fter the military commission is assembled, the military judge may be changed by the Chief Trial Judge only when, as a result of disqualification under R.M.C. 902 or for good cause shown, the previously detailed military judge is unable to proceed."

the military commission system is not constitutionally inadequate.  Bin Lep is correct that in each of these cases, the D.C. Circuit ruled that a military judge failed to maintain the appearance of impartiality.  See al-Tamir, 993 F.3d at 911 (military judge's application to be an immigration judge created appearance of partiality); Al-Nashiri III, 921 F.3d at 237 (same); Mohammad, 866 F.3d at 477 (military judge's statements on case created appearance of partiality).  But these cases were decided in the mandamus context, not the abstention context.  See al-Tamir, 993 F.3d at 908; Al-Nashiri III, 921 F.3d at 226; Mohammad, 866 F.3d at 475.  While the D.C. Circuit vacated a military judge's decisions in Al-Nashiri III, 921 F.3d at 240, permitted a detainee to move for reconsideration of a military judge's decisions in al-Tamir, 993 F.3d at 913, and ordered the recusal of a military judge in Mohammad, 866 F.3d at 477, in none of these cases did the D.C. Circuit declare the entire military commission system and all the judges within that system incompetent due to bias.  In fact, after each of those cases, the detainees returned to the military system for further adjudication.  See al-Tamir, 993 F.3d at 908 (denying request to dissolve commission); Al-Nashiri III, 921 F.3d at 240 (ordering re-litigation of proceedings and explicitly stating its ruling did not require "the Defense Department to change the way it assigns military judges . . . or the CMCR the way it considers appeals"); United States v. Mohammed, 398 F. Supp. 3d 1233, 1237 (CMCR 2019) (noting case's return following D.C. Circuit's opinion).

Finally, Al-Nashiri II forecloses Bin Lep's broad-based assault on the military commission system's integrity.  Although that case did not explicitly hold that the structure of the military commission system preserved the constitutionally required degree of independence, it did note that a prior version of the military commission system was not adequate enough to merit abstention due to the review bodies' lack of structural independence, Al-Nashiri II, 835 F.3d at 120, and then concluded that the current version of the system is "sufficiently adequate to point in favor of

abstention," id. at 123.  As has been explained many times, Al-Nashiri II's conclusion about the military commission system's adequacy was categorical and is binding on this Court. Consequently, in the absence of any judicial authority holding that the military commission system is incompetent due to structural bias and for the reasons explained above, this Court cannot accept Bin Lep's allegations of bias against Commander Larsen based solely on the fact that he is a member of the military commission system.  As such, Bin Lep has failed to establish any injury caused by Colonel Pritchard's alleged bias that Commander Larsen and the entire military commission process, including appellate review by the D.C. Circuit, are unable to remedy.

The second reason Bin Lep's bias claim against Colonel Pritchard does not fall within the extraordinary circumstances exception is that "[t]he only contested issue [allegedly] tainted by COL Pritchard's partiality is the propriety of his scheduling orders."  Suppl. Reply in Opp'n to Abeyance Mot. at 17.  Unlike in Al-Nashiri III, where the military judge "issued approximately 460 written orders" that, in combination, cast a "long shadow" irreparable on appeal, 921 F.3d at 238, Colonel Pritchard's allegedly tainted decisions in this case are narrow and discrete.  Even if Bin Lep is correct that there is "no remedy [for Colonel Pritchard's allegedly biased decision] other than . . . dismissal," Suppl. Reply in Opp'n to Abeyance Mot. at 18, Bin Lep never explains why the Court of Military Commission Review or the D.C. Circuit could not impose that remedy after his trial is completed.  Although he makes unsubstantiated allegations that permitting his commission to continue will permit a "cloud of illegitimacy" to fester, id. at 17 (quoting Al-Nashiri III, 921 F.3d at 240), Bin Lep does not point to any evidence that was lost due to Colonel Pritchard's scheduling orders or otherwise explain how those orders prejudiced the case Bin Lep will put on at trial.  In other words, because this particular allegation of judicial bias is limited to the discrete scheduling orders issued by Colonel Pritchard—which have been reconsidered by

Commander Larsen and can be reviewed on appeal—Bin Lep has again failed to establish "harm other than that attendant to resolution of his case in the military court system."  Al-Nashiri II, 835 F.3d at 128 (quoting Councilman, 420 U.S. at 758).

In sum, because Bin Lep has failed to establish that Commander Larsen and the entire military commission proceeding are incapable of fairly adjudicating the federal issues he raises, and because all the other defects he identifies in his proceeding may be addressed on appeal without causing any great, immediate, and irreparable injury, the Court concludes that Bin Lep's case does not fit within the extraordinary circumstances exception.

### B.  The Right Not to Be Tried Exception

Bin Lep never explicitly argues that his case falls within the right not to be tried exception, and this Court's explanation of why it does not will therefore be brief.  The right not to be tried exception is "for a particular kind of extraordinary circumstance: claims arising from 'express statutory or constitutional language that gives [petitioner] a right not to be tried' at all." al-Baluchi, 392 F. Supp. 3d at 58 (alteration in original) (quoting Al-Nashiri II, 835 F.3d at 131).  Most of the limited circumstances in which courts have recognized this exception—i.e., "(i) trials that would violate the double jeopardy prohibition; (ii) trials for conduct protected by the speech or debate clause; [and] (iii) trials without a grand jury indictment in violation of the Fifth Amendment," id. (citations omitted)—have no relevance to this case.

But it could be argued that some of Bin Lep's habeas claims—such as his fifth claim that he may not be tried by a military commission because he is not an alien unprivileged enemy belligerent as required by 10 U.S.C. § 948c, Habeas Pet. ¶¶ 80–81—fit within "the 'status exception,' where circumstances raise 'substantial arguments' as to whether certain individuals may be tried by the military at all," al-Baluchi, 392 F. Supp. 3d at 58 (alteration in original)

(quoting Al-Nashiri II, 835 F.3d at 131).  This argument would ultimately fail, however, since Bin Lep's claim is based not on his status but on his alleged offenses.

In Al-Nashiri II, the petitioner argued that the status exception applied because he was allegedly not charged with committing offenses in the context of hostilities and was thus not triable by military commission.  835 F.3d at 116.  The D.C. Circuit rejected this argument and held that the petitioner failed to invoke the status exception because the petitioner was not "challeng[ing] his status as an alien unprivileged enemy belligerent who is subject to detention and to trial by a military commission for certain types of conduct" but was instead "argu[ing] that the nature of his alleged offenses is such that the military lacks the authority to try them."  Id. at 134.  Unlike Bin Lep, the petitioner in Al-Nashiri II notably did not challenge his classification as an alien unprivileged enemy belligerent, id. at 116, and Al-Nashiri II is thus not directly on point.  But Al-Nashiri II's explanation that the status exception applies only to allegations based on identity instead of conduct convinces the Court that application of the status exception in this case is unwarranted in this case as well.

Under 10 U.S.C. § 948a(1) and (7), an alien unprivileged enemy belligerent is an individual who is not a U.S. citizen who has committed certain offenses such as "engag[ing] in hostilities against the United States" or having been "a part of al Qaeda at the time of the alleged offense under this chapter."  Bin Lep admits he is an alien, see Habeas Pet. ¶¶ 60, 78, but claims that "[n]one of the charges he ostensibly faces allege that" he committed the offenses necessary to be an unprivileged enemy belligerent, id. ¶ 81.  Therefore, while this claim superficially appears to be about Bin Lep's identity as an alien unprivileged enemy belligerent, it is really about what Bin Lep is alleged to have done and consequently does not present the extraordinary circumstances necessary for triggering the status exception.  See id. ¶ 80 ("Section 948[a](7) defines

'unprivileged enemy belligerent' not in terms of an immutable legal status, but in terms of a putative defendant having participated in hostilities in one of three ways . . . .").  In other words, Bin Lep's argument that his alleged offenses do not grant the military commission jurisdiction over him is more like the argument the D.C. Circuit held did not trigger the status exception in Al-Nashiri II, 835 F.3d at 134, than a civilian's argument that they may not be tried by a military court martial due to their identity, see New v. Cohen, 129 F.3d 639, 644 (D.C. Cir. 1997) (collecting cases where the status exception has applied in this circumstance).  Accordingly, the Court will not apply the status exception here, although Bin Lep is free to present that claim and his other jurisdictional challenges to the military tribunal.[6]

Similarly, Bin Lep's fourth habeas claim that the MCA violates the Constitution's guarantee of equal justice by providing that military commission charges may be levied against only "alien [unprivileged] enemy belligerents" also does not fit within the status exception. Habeas Pet. ¶ 78 (quoting 10 U.S.C. § 948c).  In Abdulrazzaq, Judge Sullivan recently rejected a similar argument, explaining that the petitioner's claim did not raise a substantial question about the military commission's jurisdiction over him since the D.C. Circuit had already upheld the military commission system in Al-Nashiri II and had rejected petitioner's equal protection claim in Bahlul v. United States, 840 F.3d 757 (D.C. Cir. 2016).  Abdulrazzaq, 422 F. Supp. 3d at 295. This Court agrees with Judge Sullivan's conclusion.  Consequently, neither this claim nor any of Bin Lep's other claims fall within the status exception to Councilman abstention.

---

[6] Although the Court is not adjudicating the merits of Bin Lep's habeas claim, the Court also notes that the charges referred against Bin Lep do explicitly allege that he is a person "subject to trial by military commission as [an] alien unprivileged enemy belligerent,"  Referred Charges [ECF No. 62-1] at 3, who "worked for several months as a 'storekeeper' at an al Qaeda camp," id. at 3, 5, and was at one time directed "to deliver al Qaeda money to Indonesia and the Philippines . . . to fund an upcoming operation," id. at 3, 11.

C. <u>The Unreasonable Delay Exception</u>

The D.C. Circuit in <u>Al-Nashiri II</u> expressly refused to hold that an "unreasonable delay in military-commission proceedings could come within an exception to abstention," but the court did not foreclose the possibility that such an exception exists.  835 F.3d at 135.  Yet even if this exception does exist—and this Court does not hold that it does—there are two reasons why Bin Lep's case would not satisfy it.

First, when discussing the potential unreasonable delay exception, <u>Al-Nashiri II</u> cited <u>Nissan Motor Corp.</u>, which explains that "[t]he kind of delay that argues against abstention is delay that might significantly impair constitutional rights," <u>Nissan Motor Corp in U.S.A.</u>, 739 F.2d at 1011; <u>see also</u> <u>Al-Nashiri II</u>, 835 F.3d at 135 (citing <u>Nissan Motor Corp.</u> for this principle).  Hence, to invoke this exception, it is not sufficient to show that the proceedings in the alternative tribunal will take a long time; the petitioner must also show that the delay will impair some constitutional right separate from the petitioner's trial rights.  <u>See</u> <u>Nissan Motor Corp.</u>, 739 F.2d at 1011; <u>see also</u> <u>Zwickler v. Koota</u>, 389 U.S. 241, 252 (1967) ("[T]o force the plaintiff who has commenced a federal action to suffer the delay of state court proceedings might itself effect the impermissible chilling of the very [First Amendment] constitutional right he seeks to protect."); <u>O'Hair v. White</u>, 675 F.2d 680, 684 (5th Cir. 1982) ("We further note the high costs involved in abstaining when the constitutional challenge includes allegations of facially impermissible discrimination and restrictions on the right to vote.").  Bin Lep has not identified any separate constitutional right he possesses that will be impaired by permitting the military commission to take the time it needs to complete its work.

Second, while Bin Lep argues, with some support, that "history indicates that [his military commission proceedings] will not reach anything approaching finality until well into the next decade," Opp'n to Abeyance Mot. at 12–13, Bin Lep's projections are, at the moment, speculation.

That speculation is informed by the troublingly slow rate of the proceedings in cases other than Bin Lep's, <u>see</u> Opp'n to Abeyance Mot. at 13, but it is speculation nonetheless.  Bin Lep's military commission has only recently convened and appears to be moving forward at a reasonable rate.  This Court is also mindful of <u>Al-Nashiri II</u>'s holding that the military commission system is adequate regardless of the "on-the-ground performance of the system that Congress and the Executive have established."  835 F.3d at 123.  If the threat of an unreasonable delay in the completion of Bin Lep's military commission does arise, and that threat impairs some constitutional right that he is able to clearly identify, Bin Lep "may pursue available remedies at that time."  <u>Id.</u> at 135.[7]

> D.  <u>The Bad Faith Exception</u>

Bin Lep argues that "[r]espondents' bad faith deprives them of any right to equitable abstention."  Opp'n to Abeyance Mot. at 11.  According to Bin Lep, respondents' bad faith is evident primarily from the fact that respondents initiated the military commission proceedings "with no reasonable expectation that they would actually commence any time soon" and from the fact that the government referred Bin Lep's charges to a military commission only after he initiated these habeas proceedings.  <u>See id.</u> at 8.[8]  The Court will address the timing argument in the next sub-section, and, contrary to Bin Lep's allegations in March, his military commission has begun its work and is moving forward.  To the extent that Bin Lep's bad faith argument remains, however, it fails to displace this Court's responsibility to abstain.

---

[7] The Court also notes that the delay discussed in <u>Al-Nashiri II</u> related to delay in the petitioner's military commission proceedings, not the delay that occurred prior to the referral of petitioner's charges for trial.  <u>See Al-Nashiri II</u>, 835 F.3d at 135.  Accordingly, Bin Lep's allegation that the government has violated his rights by waiting over a decade to refer the charges against him to a military commission does not merit an exception to abstention and is instead a claim that can be litigated before the military commission itself.

[8] Bin Lep's allegations of bad faith are also related to his allegations of Colonel Pritchard's bias, <u>see</u> Suppl. Opp'n to Abeyance Mot. at 11, which the Court has already addressed.

As respondents correctly point out, Al-Nashiri II did not address a potential bad faith exception, but such an exception has been discussed elsewhere in the context of deciding whether to abstain in favor of state criminal proceedings.  Resp'ts' Reply on Their Mot. to Hold Pet. in Abeyance [ECF No. 69] ("Reply in Supp. of Abeyance Mot.") at 7.  Respondents also correctly point out that bad faith in the abstention context "generally means that a prosecution has been brought without a reasonable expectation of obtaining a valid conviction."  Suppl. Supp. of Abeyance Mot. at 14 (quoting Kugler, 421 U.S. at 126 n.6); see also Dombrowski v. Pfister, 380 U.S. 479, 490 (1965) ("[A]ppellants have attacked the good faith of the appellees in enforcing the statutes, claiming that they have invoked, and threaten to continue to invoke, criminal process without any hope of ultimate success . . . .").  Similarly, "[b]ad faith and harassing prosecutions also encompass those prosecutions that are initiated to retaliate for or discourage the exercise of constitutional rights."  Lewellen v. Raff, 843 F.2d 1103, 1109 (8th Cir. 1988).  While Bin Lep's habeas petition asserts his innocence, Bin Lep does not allege that respondents are prosecuting him with no hope of success or that respondents initiated the prosecution to discourage him from exercising constitutional rights.  As a consequence, this case does not fall within the bad faith exception, if such an exception exists in the MCA context.[9]

E.   The Timing Exception

Bin Lep's final argument for an exception to Councilman abstention is that "[r]espondents referred charges to a military commission only after this Court exercised jurisdiction over this case."  Opp'n to Abeyance Mot. at 8; see also Town of Lockport, 430 U.S. at 264 n.8 ("[P]rinciples of comity and federalism do not require that a federal court abandon jurisdiction it has properly acquired simply because a similar suit is later filed in a state court.").  While Bin Lep claims that

---

[9] Bin Lep may, of course, continue pursuing redress for respondents' alleged improper acts within the military commission system and before the D.C. Circuit if he is ultimately convicted.

this "fact alone is dispositive," Opp'n to Abeyance Mot. at 8, this exception is, again, not one that was recognized in Al-Nashiri II.  In fact, the military commission proceedings at issue in Al-Nashiri II were initiated three years after Al-Nashiri filed his habeas petition.  835 F.3d at 114; see also al-Baluchi, 392 F. Supp. 3d at 54–55, 68 (abstaining in favor of military commission proceedings that were initiated in 2012 even though "the parties ha[d] spent years litigating procedural matters associated with the [2008] habeas petition, including discovery, access to classified information, and preservation of evidence").  The Court thus has serious doubts about whether referring charges to a military commission while a habeas petition is pending is a valid reason for a court not to abstain under Councilman.

Assuming that when Bin Lep's charges were referred for trial is a valid consideration, however, this Court would still conclude that it must abstain in favor of the military commission. "[W]here state criminal proceedings are begun against the federal plaintiffs after the federal complaint is filed but before any proceedings of substance on the merits have taken place in the federal court, the principles of Younger v. Harris should apply in full force."  Hicks v. Miranda, 422 U.S. 332, 349 (1975).  The proceedings in this habeas case have not advanced very far.  While there has been extended briefing over Bin Lep's two motions for an injunction and respondents' Abeyance Motion, the habeas petition's actual merits have yet to be litigated.  Hence, even if there is a timing exception in the MCA context, application of that exception here is unwarranted.

### III.    The Court's Adjudication of Most, But Not All, of the Claims in the Habeas Petition Would Interfere with the Military Commission

Having determined that the abstention principles discussed in Al-Nashiri II apply to this case and that there is no applicable exception, the Court must now review the claims in Bin Lep's habeas petition to determine whether they "have been, will be or, at the very least, can be raised in the military commission proceeding and the subsequent appeals process."  Khadr I, 587 F. Supp.

2d at 230; see also Khadr III, 724 F. Supp. 2d at 66 ("[I]nterference is possible where the claims raised in a habeas petition could overlap with the military commission's inquiries.").  After careful review, the Court concludes that most of Bin Lep's habeas claims—specifically, one through eight in his petition—significantly overlap with claims that have been or could be raised before his military tribunal and in the subsequent appeal process.  The allegations in claims nine and ten, however, do not significantly overlap with issues that can be raised before the military commission, and the Court's consideration of those claims will not interfere with the military commission's work.  The Court will thus grant the Abeyance Motion with respect to claims one through eight and deny it with respect to claims nine and ten.

Respondents argue, and Bin Lep does not dispute, that "[s]even of [Bin Lep's ten habeas] claims (the first though sixth, and the eighth) expressly concern the MCA proceedings against [him.]"  Abeyance Mot. at 6.  These seven claims involve allegations that respondents violated Bin Lep's speedy trial and due process rights, Habeas Pet. ¶¶ 66–75 (claims I–III), that the MCA violates the Constitution's guarantee of equal justice, id. ¶¶ 77–78 (claim IV), that Bin Lep's alleged offenses do not subject him to trial before a military tribunal, id. ¶¶ 80–84 (claims V and VI), and that charging Bin Lep with a certain conspiracy offense violates the Ex Post Facto Clause, id. ¶ 89 (claim VIII).  As respondents explain, Bin Lep "may raise his constitutional and statutory challenges to the military commission's jurisdiction, as well as his request that the charges against him be dismissed as a remedy for alleged government delay or other misconduct, in those proceedings."  Abeyance Mot. at 15 (first citing 10 U.S.C. § 948d; and then citing RMC 201(b), 905(b), 907(b)(1)).  The Court agrees—these seven claims could overlap with the military

commission's inquiries, and the Court will abstain from adjudicating them.[10]  While Bin Lep did

not raise these claims in his habeas petition, the Court will similarly abstain from adjudicating Bin

Lep's more recent allegations regarding his speedy trial rights under RMC Rule 707, Colonel

Pritchard and Commander Larsen's alleged bias, and the sufficiency of the arraignment Bin Lep

received because these claims also expressly concern Bin Lep's MCA proceedings and could be—

and indeed, generally have been—litigated before the military commission.

Bin Lep's seventh habeas claim, that the government may not detain Bin Lep since he has

never been a member of or substantially supported al Qaeda or an associated force engaged in

hostilities against the United States or its coalition partners, Habeas Pet. ¶¶ 86–87, likewise

"significantly overlaps with a question that the military commission will confront when ruling on

statutory jurisdictional issues in the proceeding against" him, Abeyance Mot. at 20.  Whether Bin

Lep is or was a member of al Qaeda or an associated force are factual questions for the military

commission to determine, and this Court will not interfere.  See Khadr I, 587 F. Supp. 2d at 231

("[T]he question of enemy combatancy can be raised in the military commission proceeding. . . .

Consequently, Councilman abstention would seem appropriate with respect to th[at] claim[]

because any rulings by this Court on [it] would necessarily affect, and possibly interfere with, the

military commission proceeding.").

The Court reaches a different conclusion with respect to Bin Lep's ninth and tenth habeas

claims.  Respondents characterize Bin Lep's ninth claim as "an interference-with-counsel-

---

[10] Because Bin Lep's Cross-Motion is based on the alleged denial of his speedy trial rights, see Mem. in Supp. of Cross-Mot. at 1–3, and the Court is granting the Abeyance Motion with respect to Bin Lep's speedy trial claims, the Court will deny Bin Lep's Cross-Motion as moot.  Al-Nashiri II endorsed such an approach, see 835 F.3d at 135, and Judge Friedman employed it in al-Baluchi, 392 F. Supp. 3d at 67 ("Because the Court will abstain from adjudicating Mr. al-Baluchi's claims before the conclusion of the military commission proceedings, the Court denies as moot Mr. al-Baluchi's petition to permanently enjoin that military commission."); see also Phelps v. Hamilton, 122 F.3d 885, 891 (10th Cir. 1997) ("It would be illogical for a federal court to preliminarily enjoin a [parallel] court proceeding when it is required to abstain from reviewing [that] proceeding altogether.").

32

communication claim [that] could well be posed under the MCA itself." Abeyance Mot. at 21. But Bin Lep's ninth claim is much broader than respondents admit. The ninth claim challenges Bin Lep's designation as a High Value Detainee and argues that this designation has infringed many of his rights. See Habeas Pet. ¶¶ 92–93. One of those rights is his right to counsel, but Bin Lep also argues that his designation imposes "significant burdens on his conditions of confinement" and that his designation is "based upon not anything he has done but on [the government's] decision to subject him to 'enhanced interrogation techniques.'" Id. ¶ 93. He accordingly titled this claim "Violation of the Prohibition on Arbitrary Punishment." Id. at 29. It is thus clear that while a portion of this claim may be related to Bin Lep's access to counsel, the claim's focus is on something else—Bin Lep's designation as a High Value Detainee. The Court will not view this challenge to Bin Lep's designation as solely an access to counsel claim merely because that is one of several rights Bin Lep alleges the government has violated.

Respondents also compare Bin Lep's claim to one that Judge Sullivan recently abstained from deciding in Abdulrazzaq. Abeyance Mot. at 21–22. But a comparison between Bin Lep's claim and the claim in Abdulrazzaq illustrates why abstention was appropriate in that case but is not here. The claim in Abdulrazzaq "pertain[ed] to the conduct of and fairness of [the petitioner's] military-commission defense; not [the] habeas proceeding." Abdulrazzaq, 422 F. Supp. 3d at 298 (listing examples of petitioner's allegations that the government was "interfer[ing] with Petitioner's constitutional and statutory right to counsel in his military commission case") (emphasis added). Bin Lep's claim, in contrast, is not directed at his ability to defend himself before the military commission and was actually filed before his commission proceedings even began. But cf. Abdulrazzaq, 422 F. Supp. 3d at 283, 285 (noting the petitioner's charges were referred in 2014 and the habeas petition at issue was filed in 2017). Even if Bin Lep is satisfied

with his ability to communicate with his lawyers about the proceedings before the military commission, his concerns about his High Value Detainee designation and conditions of confinement will remain.

Another significant fact that counsels against abstaining from hearing Bin Lep's ninth habeas claim is "the fact that the military commissions have expressly disclaimed any jurisdiction over conditions-of-confinement claims generally, and over detainees' [High Value Detainee] designations specifically."  Opp'n to Abeyance Mot. at 15; see also Ruling, United States v. Al Iraqi, AE 147B (Military Comm'ns Trial Judiciary May 23, 2019), at 2, available at https://www.mc.mil/Portals/0/pdfs/alIraqi/Al%20Iraqi%20(AE147B).pdf ("This Commission is one of limited jurisdiction . . . . The Defense has failed to present sufficient evidence or legal authority supporting the proposition that this Commission has the authority to order the Joint Task Force-Guantanamo Bay or any other organization or governmental agency to discontinue referring to the Accused as a "High Value Detainee."); Ruling, United States v. Mohammad, AE 448G (Military Comm'ns Trial Judiciary Apr. 13, 2017), at 1, available at https://www.mc.mil/Portals/0/pdfs/KSM2/KSM%20II%20(AE448G(RULING)).pdf?ver=AQe9t y7A2Is9kcCDv3PUvg%3d%3d (same).  Since Bin Lep's ninth claim is not one that "ha[s] been, will be or, at the very least, [could] be raised in the military commission proceeding and the subsequent appeals process," Khadr I, 587 F. Supp. 2d at 229, the Court will consider that claim in this habeas litigation.

The Court will also consider Bin Lep's tenth habeas claim.  That claim alleges that the government has "blocked any means by which [Bin Lep] can properly begin to request" a mixed medical commission under U.S. Army Regulation 190-8.  Habeas Pet. ¶ 95; see also Al-Qahtani v. Trump, 443 F. Supp. 3d 116, 131 (D.D.C. 2020) ("Section 3-12 of Army Regulation 190-8

provides for the repatriation of sick and wounded enemy prisoners of war and, therefore, for sick and wounded other detainees.").  Bin Lep alleges that the government has denied his request to hire a medical expert to evaluate him and that the government has prevented his counsel from accessing his medical records.  Habeas Pet. ¶¶ 55–56, 95–96.  According to Bin Lep, these actions have violated his rights under Army Regulation 190-8 and have abrogated Al-Qahtani.  Id.

Respondents' argument in favor of abstention is that Bin Lep's tenth habeas claim is predicated on the status of Bin Lep's physical and mental health, and the status of Bin Lep's mental health is an issue that overlaps with claims that could be raised before the military commission such as whether Bin Lep is entitled to an affirmative defense for lack of mental responsibility.  Id. at 23.  But respondents have again misconstrued Bin Lep's claimed entitlement to relief.  While Bin Lep does allege that he has suffered mental harm due to his confinement at Guantanamo, he also alleges physical harm, Habeas Pet. ¶ 95, and respondents effectively conceded at oral argument that abstention would not be appropriate if Bin Lep pursued a medical commission on the basis of a physical issue that could not be raised before the military commission, see Mots. Hr'g Tr. at 66:21–67:3.  Just as the Court would not view Bin Lep's ninth habeas claim as a claim solely about access to counsel, the Court will not view the tenth habeas claim as one solely about his mental state.

Furthermore, Bin Lep does not request any finding regarding his mental state.  Instead, he asks this Court to order the government to permit him to receive an independent medical evaluation and to provide his counsel with his medical records.  Habeas Pet. at 32.  The government has not shown that the Court's adjudication of Bin Lep's entitlement to these forms of relief would require the Court to make findings about his mental state or would interfere with the military commission. While it is possible that in the future Bin Lep may advance a claim that does substantially overlap

with mental competency issues that should be litigated before the military tribunal, Bin Lep is not advancing those claims now.[11]   It is also significant that in <u>Abdulrazzaq</u>, Judge Sullivan decided a habeas claim related to the petitioner's medical care even after charges against the petitioner had been referred to a military commission.  422 F. Supp. 3d at 285–89.  For all these reasons, the Court will permit Bin Lep's tenth claim to proceed in this habeas litigation as well.

## IV.   The Court Has Jurisdiction to Consider the Remaining Habeas Claims

In a prior memorandum opinion, this Court held that it possessed jurisdiction to adjudicate all ten of Bin Lep's habeas claims under 28 U.S.C. § 2241.  Mem. Op., Dec. 14, 2020 at 5–7; <u>see also</u> <u>Aamer v. Obama</u>, 742 F.3d 1023, 1030 (D.C. Cir. 2014) ("If, as petitioners assert, their claims fall within the scope of habeas, then the district courts possessed jurisdiction to consider them because the federal habeas corpus statute extends, in its entirety, to Guantanamo.").  The Court issued this decision before Bin Lep's charges were referred to a military commission, however, and respondents argue that the Court now lacks jurisdiction to adjudicate Bin Lep's claims pursuant to 10 U.S.C. § 950g.  <u>See</u> Suppl. Supp. of Abeyance Mot. at 14–15.  Section 950g(a) "vests exclusive jurisdiction over challenges to military commission proceedings in the D.C. Circuit."  <u>Id.</u> at 15; <u>accord</u> 10 U.S.C. § 950g(a).  Because the Court will grant the Abeyance Motion with respect to claims one through eight of Bin Lep's habeas petition, the Court need not determine whether respondents are correct that the Court lacks jurisdiction to consider those habeas claims. <u>See</u> <u>Abdulrazzaq</u>, 422 F. Supp. 3d at 292; <u>see also</u> <u>Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.</u>, 549 U.S. 422, 431 (2007) ("[A] federal court has leeway 'to choose among threshold

___
[11] If this situation does arise, respondents may request that the Court abstain from addressing those claims at that time.

grounds for denying audience to a case on the merits.'") (quoting <u>Ruhrgas AG v. Marathon Oil Co.</u>, 526 U.S. 574, 585 (1999)).

But the Court does conclude that respondents are mistaken with respect to claims nine and ten.  The Court is permitting those two habeas claims to proceed precisely because they will <u>not</u> be litigated before the military commission.  The fact that Section § 950g(a) grants the D.C. Circuit exclusive jurisdiction to determine the validity of the military commission's final judgments is irrelevant—the military commission will not reach final judgments with respect to these claims.  As such, the referral of Bin Lep's charges to a military commission does not displace this Court's earlier conclusion that it possesses jurisdiction under 28 U.S.C. § 2241 to adjudicate claims nine and ten of Bin Lep's habeas petition.[12]

## Conclusion

For the foregoing reasons, the Court will grant the Abeyance Motion with respect to claims one through eight of Bin Lep's habeas petition but will deny the motion with respect to claims nine and ten.  The Court will also deny as moot Bin Lep's Cross-Motion for a permanent injunction.  A separate Order will issue on this date.

/s/
JOHN D. BATES
United States District Judge

Dated: <u>January 13, 2022</u>

---

[12] In their Abeyance Motion, respondents cursorily stated that Bin Lep's tenth habeas claim is now legally insufficient because the Secretary of the Army recently "except[ed] the detainees now at Guantanamo, including [Bin Lep], from Army Regulation 190-8, including for purposes of mixed medical commission review."  Abeyance Mot. at 22.  Respondents framed this argument as, and the Court understands it to be, an attack on the merits of Bin Lep's claim.  <u>See id.</u> at 22–23 ("But even apart from its legal insufficiency on the merits . . . .").  But this claim's merits are not relevant to the issue of whether the Court should abstain from adjudicating it, and the Court accordingly did not consider respondents' argument when issuing this decision.  Respondents may advance this argument—as well as any additional argument that the Secretary of Army's recent actions have displaced this Court's jurisdiction—in later briefing in this habeas proceeding.